# EMILIE TAYLOR

*vs.*

# ROBERT RAMSAY COMPANY ᴇᴛ ᴀʟ.

*Workmen's Compensation—Industrial Accident Commission—*
*Presumption as to Jurisdiction—Collateral Attack.*

Whether a particular case falls within the admiralty jurisdiction, so as to be withdrawn from the jurisdiction of the Industrial Accident Commission, is a mixed question of law and fact, and consequently the facts cannot be assumed at the instance of the party upon whom the burden rests to establish them.

p. 122

Since the Workmen's Compensation Act declares that it shall be presumed, in the absence of substantial evidence to the contrary, that the claim comes within the provisions of that statute, if the Industrial Accident Commission, apparently acting within the scope of its authority, makes an award of compensation, and its jurisdiction is attacked upon allegations of facts claimed to deprive it of jurisdiction, the burden of establishing such facts is upon the party asserting them.        p. 123

That the person, on account of whose death the claim is made, was at the time engaged in "longshore work," does not show that he was employed as a stevedore, or was engaged in maritime work, or that at the time of his injury or death he was on navigable waters, so as to exclude jurisdiction under the Workmen's Compensation Act.        p. 124

Where the jurisdiction of the Industrial Accident Commission depended on the facts of the case, and the Commission had to pass upon and determine the facts, and no appeal was taken from its finding and decision, these cannot be collaterally attacked in a suit by the claimant to recover the compensation awarded by the Commission.        pp. 124, 125

*Decided June 28th, 1921,*

Appeal from the Superior Court of Baltimore City (SOPER, C. J.).

Action by Emilie Taylor against the Robert Ramsay Company and the United States Fidelity Company, to recover compensation awarded plaintiff by the State Industrial Accident Commission of Maryland. From a judgment for defendants, plaintiff appeals. Reversed.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*J. Royall Tippett,* for the appellant.

*Guion Miller* and *J. Kemp Bartlett, Jr.,* with whom were *Bartlett, Poe & Claggett* on the brief, for the appellees.

THOMAS, J., delivered the opinion of the Court:

On the 16th of May, 1917, the State Industrial Accident Commission of Maryland, upon finding that Robert L. Taylor, of Baltimore, Maryland, had died on the first of March, 1917, as the result of injuries which arose out of and in the course of his employment by the Robert Ramsay Company, awarded his widow, Emilie Taylor, compensation of eleven dollars per week, for the period of seven years and twenty-two weeks from the date of his death, and funeral expenses not to exceed seventy-five dollars, to be paid by the said company and the United States Fidelity and Guaranty Company, the insurer of the Ramsay Company under the Workmen's Compensation Act. After paying the seventy-five dollars and the weekly payments for seven months, said employer and insurer refused to make any further payments, and on the 13th of March, 1918, Mrs. Taylor brought this suit in the Superior Court of Baltimore City against the Ramsay Company and the United States Fidelity and Guaranty Company,

hereinafter referred to as the insurance company, to recover the compensation awarded her.

In June, 1919, the insurance company filed a petition to the commission to "annul and dismiss the award because of lack of jurisdiction," but the commission dismissed the petition on the 11th of July, 1919. In June, 1919, the insurance company also filed a bill in the Circuit Court of Baltimore City to enjoin the further prosecution of the suit by the widow, on the ground that Robert L. Taylor was employed by the Johnson Line Steamship Company, and was not an employee of the Robert Ramsay Company; that it was insurance carrier for the Ramsay Company, but not for the Johnson Line Steamship Company, and that the award against it was the result of a mistake, for which it was not responsible, and which was not discovered by it until May, 1919. It was also contended in that case that, in view of the decision of the Supreme Court of the United States in *Southern Pacific Co.* v. *Jensen,* 244 U. S. 205, in which it was held that the Workmen's Compensation Act of New York had no application to stevedores when loading or unloading vessels engaged in interstate commerce, or bound from a port in this country to a foreign port, the insurance company was not liable at all, and that the policy of insurance issued by it was void. From the decree of the lower court sustaining a demurrer to the bill, the insurance company appealed, and the decree was affirmed in 136 Md. 545. In the opinion in that case, prepared by JUDGE STOCKBRIDGE, this Court, after stating that, in the original claim filed by the widow with the commission, and in the report of the Ramsay Company, the decedent was said to have been an employee of the Ramsay Company, and the award was made on that basis, that no hearing before the commission was asked for by the Ramsay Company or the insurance company, and that no appeal was taken by either from the award, said: "It has long been the settled rule in this State that where an appeal is given by law to the parties to be affected by the action of the tribunal

to which power is given in the first instance of passing upon the question involved, any objection going to the legality or regularity of the proceeding is open for review on that appeal, and redress on such grounds must be sought in that mode only. * * * 'Application to a court of equity for relief against a judgment will be justified by showing any facts which clearly prove that it would be against conscience to execute the judgment, and of which the injured party could not have availed himself at law or of which he might have availed himself at law, but was prevented by fraud or accident unmixed with any fault or negligence in himself.' "

After the suit for an injunction was disposed of by this Court, the Ramsay Company and the insurance company filed in this case, in addition to the pleas of "never promised" and "never indebted as alleged," a "special plea," a demurrer to which was sustained by the court below. The defendants then filed "a special additional plea," in which they alleged, "That the claim set forth in the plaintiff's declaration is based upon an alleged order or award of the State Industrial Accident Commission of Maryland, passed on the 16th day of May, 1917, which undertakes to direct this defendant to pay to the plaintiff the sum of eleven dollars ($11.00) per week for a period of seven years and twenty-two weeks (7 years and 22 weeks), accounting from the first day of March, 1917. That said alleged order or award so passed by said Commission, was based upon the facts that Robert L. Taylor, the husband of the plaintiff, met his death on the 1st day of March, 1917, while he was employed as the tally keeper of stevedores on the steamship "Queremore," which was afloat on the navigable waters of Baltimore harbor, and while he was in the employ of the Robert Ramsay Company, who are steamship agents. That the said facts upon which the said award was based as aforesaid, constituted the employment in which the said Robert L. Taylor was engaged at the time of said accident a maritime occupation, and the said State Industrial Accident Commission had no jurisdiction

over the subject-matter of said alleged order or award, the said subject-matter coming exclusively within the admiralty jurisdiction, and the said alleged order or award is null and void." The plaintiff demurred to this plea, but the court overruled the demurrer, and the plaintiff then filed a replication alleging that the deceased was not "employed at work on the steamship Queremore"; that he was not "engaged in a maritime occupation," but was employed by the Robert Ramsay Company, which was not engaged in "operating steamships or steamship lines of any kind"; that said order of the commission was valid; that at the time of its passage the commission had jurisdiction of the subject-matter of the award; that the subject-matter did not come within the exclusive admiralty jurisdiction, and that said award was not null and void, and, for a second replication to said plea, "that the subject-matter in controversy in this case is res adjudicata." The defendants joined issue on the first replication and traversed the second.

At the trial of the case the plaintiff produced the secretary of the commission, who testified that the commission passed the order of the 16th of May, 1917; that no appeal had been taken from said order, and that no order had been passed by the commission terminating the payments therein mentioned. The plaintiff then offered in evidence the record of proceedings before the commission, containing the claim of the widow made under oath; the notice of death to the employer; the employer's report of death; notice of death by the employer to the insurance company; formal proof of death under oath of claimant; the award of the commission, dated May 16th, 1917, and the order of the commission dismissing the petition filed by the insurance company in June, 1919. The report of the injury by the Ramsay Company, signed by "A. B. Gillespie, superintendent," states that the employer was the Robert Ramsay Company; that the business of the company was "steamship agent," and that the "place of work where accident occurred" was "Pier 8, Lo-

cust Point," Baltimore, Maryland; that the hour of the accident was "not known (at night)"; that the accident happened "on the premises"; that the occupation of the decedent was "tally clerk," and that he "fell overboard" and was "drowned." The proof of death furnished by the claimant stated that the decedent was employed by the Robert Ramsay Company as tally clerk, and had been engaged in "long-shore work since November, 1915." The order or award of the commission recited that the claim for compensation had been filed by the widow; that due notice of the same had been given to the Ramsay Company and to the insurance company; that the parties interested had made no application for a hearing; that the commission had investigated the claim, and after due consideration found: "That Robert L. Taylor was injured on the first of March, 1917, while in the employ of the Robert Ramsay Company. That as a result thereof he died on the same day. That the injuries and death arose out of and in the course of his employment. That his average weekly wage was $22.00. That the insurer of said employer was the United State Fidelity and Guaranty Company. That he left surviving him his wife, Emilie Taylor, who was wholly dependent upon him for support at the time of his injury and death, and is, therefore, entitled to an award of $11.00 per week for the period of seven years and twenty-two weeks from the first day of March, 1917."

The plaintiff testified that she had been paid the amount awarded by the commission for seven months, and had also received the seventy-five dollars for funeral expenses. On cross-examination she stated that she "did not know anything about the circumstances of her husband's death, except that he was drowned."

The defendants called as a witness William H. Stevens, who, after stating that he was employed on March 1st, 1917. by the "Johnson Line Foreign Agency," that he knew the decedent, Robert L. Taylor, and remembered "the night he disappeared," further testified as follows: "Q. Do you

know what work he was engaged in on the night he disappeared? A. He was sent out on a scow of cotton. Q. What was he to do on the scow of cotton? A. Check it up. Q. What was being done with that cotton? A. Being put aboard ship from scow. (The Court) Q. Where was the ship? A. Lying on the east side of Pier 8, Locust Point, in Baltimore harbor, and the scow was along side the ship in Baltimore harbor. (The Court) Q. What do you mean by tally clerk? A. We send them out to check the marks and quantity of all freight coming off the scow, and going on the vessel, and that was his duty and had been for about fifteen months or somewhere around there. The stevedores put freight aboard and he checked it and got the marks." He was not engaged in any other work that the witness knew of. "He was supposed to be with our company." On cross-examination he testified as follows: "Q. What was he supposed to do other nights? A. Check cargoes. Q. From where to where? A. Whatever ship we happened to have in port at the time. My position was to put the men to work and have charge of the ship, and look after the cargo. I sent him out on the scow that night, but I did not see him go on it nor did I see him go on it after he left the office. I did not see him loading from the scow to the ship after I sent him out; I did not see him any more. I did not see him on the scow. From my own personal knowledge I do not know whether he got on the scow or not." The defendant also called Frank Balcer, who, after stating that he knew Robert L. Taylor, and that he, witness, was foreman for Mr. Ramsay, and had the "privilege of putting the men to work employed in loading vessels. They were stevedores," testified as follows: "Q. Do you remember the night Robert L. Taylor disappeared? A. We went to work at 6 o'clock that night and Robert Taylor was supposed to go in the lighter, and when he goes on that lighter, I cannot take nothing off until he checks it. I cannot touch it until he says it is all right; then I can go to work on it with my men. So we worked until about quarter

of ten. Robert L. Taylor was on the lighter. The lighter was located on the east side of Pier 8, alongside of the ship. Q. What was being done with the lighter? A. He had to check the marks of the cotton and the numbers of it, was tally keeper is what he had to do. Taking it off the lighter and putting it on the ship, and I finished that hatch about quarter of ten and he was to go off that lighter and go on the wharf; I missed him and I do not know where he got to. Q. The last you saw of him he was on the lighter? A. Yes, sir; where he got to I cannot say." On cross-examination he testified "that he saw Robert L. Taylor on the lighter, and that the ship that was being loaded was 'the Queremore.' Foreign ships, from Liverpool." Witness worked for the Robert Ramsay Company; witness did not know to whom the boats belonged.

The case was tried before the court and a jury, and upon the evidence referred to, which was all the evidence in the case, the court below instructed the jury "that from the uncontradicted testimony in this case it appears that the deceased, Robert L. Taylor, at the time of his death was engaged in a maritime occupation and the alleged award of the State Industrial Accident Commission is null and void for want of jurisdiction, and their verdict must be for the defendants." The plaintiff excepted to the granting of this prayer, and, the verdict and judgment being in favor of the defendants, she has brought this appeal.

In the case of *Atlantic Transport Company* v. *Imbrovek,* 234 U. S. 52, the Atlantic Transport Company was loading the Pretoria, belonging to the Hamburg-American Steam Packet Company, while she was lying in the port of Baltimore. The libelant was injured while working on the ship, under one of the hatches, and engaged in loading and storing copper. In disposing of the question "whether the cause was one of admiralty and maritime jurisdiction," after citing cases in support of the statement, "every species of tort, however occurring, and whether on board a vessel or not, if

upon the high seas or navigable waters, is of admiralty cognizance," and after referring to the contention of the company that the locality of the tort was not controlling, but that the tort must be of a maritime character, Mr. Justice Hughes said: "The libelant was injured on a ship, lying in navigable waters, and while he was engaged in the performance of maritime service. We entertain no doubt that the service in loading and stowing a ship's cargo is of this character. Upon its proper performance depend in large measure the safe carrying of the cargo and the safety of the ship itself; and it is a service absolutely necessary to enable the ship to discharge its maritime duty. * * * If more is required than the locality of the wrong in order to give the court jurisdiction, the relation of the wrong to maritime service, to navigation and to commerce on navigable waters, was quite sufficient." In the case of *Southern Pacific Company* v. *Jensen, supra,* Jensen, an employee of the company, while engaged in unloading a steamship which was owned and operated by the company between the ports of New York and Galveston, Texas, and which was lying in the navigable waters of the United States, at Pier 49, North River, was fatally injured by striking his head against the top line of the hatchway of the ship, and his widow, son and daughter were awarded compensation by the Workmen's Compensation Commission of New York. On appeal from the decision of the Court of Appeals of New York sustaining the award, the Supreme Court of the United States, citing the case of *Atlantic Transport Company* v. *Imbrovek, supra,* said: "The work of a stevedore in which the deceased was engaged is maritime in its nature; his employment was a maritime contract; the injuries which he received were likewise maritime; and the rights and liabilities of the parties in connection therewith were matters clearly within admiralty jurisdiction," and the court said further: "The legislature (of New York) exceeded its authority in attempting to extend the statute under consideration to conditions like these here disclosed. So ap-

plied, it conflicts with the Constitution, and to that extent is
invalid. Exclusive jurisdiction of all civil cases of admiralty
and maritime jurisdiction is vested in the Federal District
Courts, 'saving to suitors, in all cases, the right of a common
law remedy, where the common law is competent to give it.'
The remedy which the compensation statute attempts to give
is of a character wholly unknown to the common law, in-
capable of enforcement by the ordinary processes of any court
and is not saved to suitors from the grant of exclusive juris-
diction."

It is apparent from the decisions to which we have re-
ferred that the question whether a particular case falls with-
in the admiralty jurisdiction referred to is a mixed question
of law and fact, and where that is the case the facts cannot be
assumed at the instance of the party upon whom the burden
rests to establish them. This rule is firmly established and
has never been departed from in this State. In the case of
*Calvert Bank* v. *Katz,* 102 Md. 56, JUDGE JONES, speaking
for the Court, said: "Doubtless the jury would have found
these facts according to the testimony, but the sufficiency of
the evidence to satisfy the jury, or the circumstance that it
is all on one side, does not authorize the court to direct the
jury that it proves the fact." And in the case of *Balto. &
O. R. R. Co.* v. *Hendricks,* 104 Md. 76, CHIEF JUDGE MC-
SHERRY said: "There is no principle better established than
that which denies the court the right of assuming any fact, in
aid of a prayer, when the *onus* of proving such fact rests upon
the party asking the instruction, no matter how strong and
convincing his proof on the subject may be." See also *Lemp
Brewing Co.* v. *Mantz,* 120 Md. 176; *Jewell Tea Co.* v.
*Weber,* 132 Md. 178; *Coastwise Shipbuilding Co.* v. *Tolson,*
132 Md. 203; *Beasemen* v. *Butler,* 133 Md. 382; *Harrison*
v. *Central Construction Co.,* 135 Md. 170; *Thistle Mills* v.
*Sparks,* 137 Md. 117; *Bell* v. *Steen & Bros.,* 137 Md. 388.

But it is urged on behalf of the appellees that the commis-
sion is an inferior tribunal of limited jurisdiction, and that

where its jurisdiction is questioned, it cannot be assumed, but must affirmatively appear on the face of its proceedings. The record of the proceedings offered in evidence shows that the widow filed her claim; that the defendants had notice of it; that she filed proof of death; that the commission investigated the claim and found that the decedent was an employee of the Ramsay Company; that he died as the result of injuries received on the 1st of March, 1917; that his death arose out of and in the course of his employment; that his average weekly wage was twenty-two dollars; that the United States Fidelity & Guaranty Company was the insurer of the employer; that the deceased left surviving him his wife, the appellant, who was totally dependent upon him, and that the commission made the award referred to. Section 61 of the Workmen's Compensation Act (Acts 1914, ch. 800, sec. 62, Acts 1920, ch. 456) expressly declares that in any proceeding for the enforcement of a claim for compensation "under this act it shall be presumed in the absence of substantial evidence to the contrary: (a) That the claim comes within the provisions of the act," and upon the record offered in evidence the commission was authorized to make the award. Where, as in this case, the commission, apparently acting within the scope of its authority, makes an award of compensation, and its jurisdiction is attacked upon allegations of facts claimed to deprive it of its jurisdiction, the burden of establishing such facts rests upon the party asserting them. Therefore, even if we assume that an award of the commission made under such circumstances is open to a collateral attack, it is clear that the court below erred in granting the prayer taking from the jury the finding of the facts asserted and relied on by the defendants. The suggestion of the appellees that the widow's proof of death states that the decedent was engaged in "longshore work'"; that the employer's report states that they were steamship agents, at Pier 8, Locust Point, and that the decedent fell overboard, and that it therefore appears on the face of the proceedings that the commis-

sion did not have jurisdiction, is without force. The papers filed with the commission also state that the accident occurred on the premises (Pier 8); that the hour of the injury or death was unknown, and that the claimant and employer were not certain of the injury or death until April 27th. It by no means follows from the fact that the decedent was engaged in longshore work that he was employed as a stevedore, or was engaged in maritime work, or that at the time of his injury or death he was on the navigable waters of the harbor. Indeed, even the evidence in this case does not leave the question entirely free of doubt, for neither of the witnesses saw the decedent fall overboard, or knew how, *when or where* the accident occurred.

But is the jurisdiction of the commission, under the circumstances of this case, open to collateral attack? Its jurisdiction depended upon the facts of the case, and the commission was authorized and had to pass upon and determine what the facts were, and no appeal was taken from its finding and decision. It is said in 23 *Cyc.* 1088: "Where the court judicially considers and adjudicates the question of its jurisdiction, and decides that the facts exist which are necessary to give it jurisdiction of the case, the finding is conclusive and cannot be controverted in a collateral proceeding. * * * These rules apply where a statute confers general jurisdiction over a particular class of cases upon a certain tribunal, as in the case of courts of the United States, and probate courts, and generally, if the jurisdiction of an inferior court depends upon the existence of a certain fact or state of facts, and it is shown by the record that there was evidence tending to prove such facts, and such evidence was adjudicated sufficient, and the court judicially determined that such facts existed, then the judgment cannot be collaterally impeached or contradicted." In addition to the cases cited in the notes to the text, we refer to the case of *Toy Toy v. Hopkins,* 212 U. S. 542, where facts were alleged to show that the circuit court did not have jurisdiction, and where the Supreme Court, speaking through

Mr. Chief Justice Fuller, said: "If such were the facts, and they made out a want of jurisdiction under the applicable statutes, * * * the circuit court, nevertheless, was authorized to hear and pass upon those questions in the first instance, and its decision was open to review in the appellate court by writ of error. But it could not be attacked collaterally as absolutely void, and *habeas corpus* cannot be availed of as a writ of error." See also *Louisville Trust Co.* v. *Comingor,* 184 U. S. 18. The principle stated has been fully recognized and frequently applied in this State. In the case of *Stanley* v. *Safe Deposit Co.,* 87 Md. 453, Chief Judge McSherry said: "It is undoubtedly true that the orphans' courts are tribunals of special, limited jurisdiction. They have no powers other than those conferred by statute and such in addition as are incident to and necessary for the performance of the ones expressly given. But there can be no question that to them is committed exclusively the authority to admit wills to probate and to grant letters testamentary, and in cases of intestacy, letters of administration. The authority is, whilst exclusive, itself also limited. There are circumstances which restrict its exercise to prescribed localities. If the circumstances which give rise to the jurisdiction do not exist in a particular case the authority to act does not arise. But who is primarily to determine whether those circumstances do exist? * * * Now, it is obvious that when the will, wherein the testator declared himself to be a resident of Baltimore County, was presented to the orphans' court of that county, for probate, *that* court was required to decide and determine whether it had jurisdiction to admit the will to probate. And therefore, at the threshold, had power to decide and determine whether Mr. Cox had been, in fact, at the time of his death, a resident of the county. This was an inquiry which it was necessary for the orphans' court to make and to decide before it could proceed either to admit the will to probate or to grant letters of administration. * * * The subject being within the court's jurisdiction all acts done in consequence

of and pursuant to its decision on a matter of fact that gave it the right to exercise that jurisdiction, are valid until reversed on appeal or set aside by its own order, even though it should subsequently appear that the conclusion reached on that matter of fact was not actually warranted." See also *Arnsperger* v. *Crawford,* 101 Md. 247; *Josselson* v. *Sonneborn,* 110 Md. 546; *Smith Premier Co.* v. *Westcott,* 112 Md. 146. The doctrine of these cases furnishes an additional reason why the prayer referred to should not have been granted, and also shows that there was error in the ruling of the court below overruling the plaintiff's demurrer to the defendants' "special additional plea."

Because of the errors mentioned, we must reverse the judgment of the court below and remand the case for a new trial.

*Judgment reversed, with costs, and new trial awarded.*