## AROS v AMERICAN SHIPBUILDING CO

Ohio Appeals, 9th Dist, Lorain Co

No 676. Decided Oct 20, 1933

Levin & Levin, Cleveland, for plaintiff in error.

F. M. Secrest, Cleveland, for defendant in error.

## OPINION

By STEVENS, J.

Two questions are here presented:

1. Was plaintiff, while engaged in making repairs upon a boat located in a permanent dry dock, built upon the land, engaged in maritime employment?

2. If engaged in maritime employment, could plaintiff and defendant, by conformance to the regulations and orders of the Industrial Commission of Ohio, place themselves under the jurisdiction of said Industrial Commission of Ohio in such manner as to preclude either party from thereafter challenging such jurisdiction?

Counsel for plaintiff and defendant have submitted exhaustive briefs and have ably argued the questions involved, and have thereby greatly assisted the court in the determination of said questions.

The first question presented has, in our opinion, been clearly answered in the affirmative by the Supreme Court of the United States in the case of Steamship Jefferson, 215 U. S. 130, at p. 142:

"In reason we think it cannot be held that a ship or vessel employed in navigation and commerce is any the less a maritime subject within the admiralty juris-

diction when, for the purpose of making necessary repairs to fit her for continuous navigation, she is placed in a dry dock and the water removed from about her, than would be such a vessel if fastened to a wharf in a dry harbor, where, by the natural recession of the water by the ebbing of the tide, she for a time might be upon dry land. Clearly in the case last supposed the vessel would not cease to be a subject within the admiralty jurisdiction merely, because for a short period by the operation of nature's laws, water did not flow about her. Nor is there any difference in principle between a vessel floated into a wet dock, which is so extensively utilized in England for commercial purposes in the loading and unloading of vessels at abutting quays, and the dry dock into which a vessel must be floated for the purpose of being repaired, and from which, after being repaired, she is again floated into an adjacent stream. The status of a vessel is not altered merely because in the one case the water is confined within the dock by means of gates closed when the tide begins to ebb, while in the other the water is removed and the gates are closed to prevent the inflow of the water during the work of repair.

"It was long ago recognized by this court that a service rendered in making repairs to a ship or vessel, whether in or out of the water, was a maritime service. Peyroux v Howard, 7 Pet. 324.

"But we need not further pursue the subject, since the error of the contention that a vessel, merely because it is in a dry dock, ceases to be within the admiralty jurisdiction, was quite recently established in The Robert W. Parsons, 191 U. S. 17. In disposing of the proposition we are now considering it was further said (p. 33):

"'A further suggestion, however, is made that the contract in this case was not only made on land, but was to be performed on land, and was in fact performed on land. This argument must necessarily rest upon the assumption that repairs put upon a vessel while in dry dock are made upon land. We are unwilling to admit this proposition. * * * A dry dock differs from an ordinary dock only in the fact that it is smaller, and provided with machinery for pumping out the water in order that the vessel may be repaired. All injuries suffered by the hulls of vessels below the water line, by collision or stranding, must necessarily be repaired in a dry dock, to prevent the inflow of water, but it has never been supposed, and it is believed the proposition is now for the first time made, that such repairs were made on land * * * But as all serious repairs upon the hulls of vessels are made in dry dock, the proposition that such repairs are made on land would practically deprive the admiralty courts of their largest and most important jurisdiction in connection with repairs. No authorities are cited to this proposition, and it is believed none such exists'."

The second question presents a situation more difficult of solution than the first.

That the parties to an action cannot, by consent, confer jurisdiction of the subject-matter upon a tribunal which has no jurisdiction, is elementary. But where jurisdiction of the subject-matter depends upon the establishment of an issuable fact and the parties expressly or by their conduct concede the existence of such fact, submit to the jurisdiction of the tribunal, and permit the question involved to proceed to final disposition without raising the jurisdictional question, it is the opinion of this court that such parties are thereafter estopped to raise the question of jurisdiction in subsequent proceedings.

"If a court have jurisdiction of the subject matter generally, and whether it has in the particular case, depends upon some fact to be tried; and if that fact be established by admissions in the pleadings, then the parties are estopped by their pleadings from introducing evidence to disprove the admitted fact in order to oust the court of jurisdiction.

"If a party admits a cause of action set up against him, in a suit before a court authorized to render judgment for that cause of action, such admission does not confer jurisdiction by consent upon the court, even though the cause of action did not exist, but simply admits by the pleadings, facts which it would otherwise have been necessary to establish by evidence, in order to show that the cause of action existed; and the existence of such fact being established, whether by the pleadings, or by proof, the judgment cannot be attacked on the ground that the jurisdictional fact did not exist at the time."

Wanzer and others v Howland and others, 10 Wis. 7 (second and third paragraphs of the syllabus).

"A court has jurisdiction of any subject-matter if by the law of its organization it has authority to take cognizance of, try and

determine cases of that description."

Cooley on Constitutional Limitations, page 491.

"But we must conclude from all this, where the jurisdictional defect does not appear upon the face of the record, not that the court has jurisdiction of the subject-matter, but that the assumption of such jurisdiction, though under a mistake of fact, and the rendition of judgment, involve the finding that the necessary facts exist to give jurisdiction, as conclusively as though the issue were expressly made."

Peninsular Sav. Bank v Ward, 79 NW 911, at p. 912.

"When a tribunal is clothed with jurisdiction of the class of actions to which a controversy belongs, and its right to adjudicate the controversy depends on certain facts which it must ascertain, and it makes an express finding on them, that decision becomes as much res adjudicata as the decision of any other issue, and the parties are precluded from reopening it afterwards, except by appeal or writ of error. They are precluded, not because jurisdiction of the subject-matter can be waived or conferred by consent, but because it is conferred by law, and the facts on which it may be exercised have been found to exist in the particular controversy. If the decision that they existed was erroneous, the remedy is the same as when other erroneous decisions occur—review by an appellate court, to which the cause may be carried and the decision reversed, if the evidence on which it was given is preserved in the record in a way to enable the upper court to pass on it."

Bradley v Bernero, 78 SW 64, at p. 65.

"But is the jurisdiction of the Commission, under the circumstances of this case, open to collateral attack? Its jurisdiction depended upon the facts of the case, and the Commission was authorized and had to pass upon and determine what the facts were, and no appeal was taken from its finding and decision. It is said in 23 Cyc. 1088:

"'Where the court judicially considers and adjudicates the question of its jurisdiction, and decides that the facts exist which are necessary to give it jurisdiction of the case, the finding is conclusive and cannot be controverted in a collateral proceeding. * * * These rules apply where a statute confers general jurisdiction over a particular class of cases upon a certain tribunal, as in the case of courts of the United States and probate courts, and generally, if the jurisdiction of an inferior court depends upon the existence of a certain fact or state of facts, and it is shown by the record that there was evidence tending to prove such facts, and such evidence was adjudicated sufficient, and the court judicially determined that such facts existed, then the judgment cannot be collaterally impeached or contradicted.'

"In addition to the cases cited in the notes to the text, we refer to the case of Toy Toy v Hopkins, 212 U. S. 542, 29 Sup. Ct. 416, 53 L. Ed. 644, where facts were alleged to show that the Circuit Court did not have jurisdiction, and where the Supreme Court, speaking through Mr. Chief Justice Fuller, said:

"'If such were the facts, and they made out a want of jurisdiction under the applicable statutes, * * * the Circuit Court, nevertheless, was authorized to hear and pass upon those questions in the first instance, and its decision was open to review in the appellate court by writ of error. But it could not be attacked collaterally as absolutely void, and habeas corpus cannot be availed of as a writ of error.'

"See, also, Louisville Trust Co. v Comingor, 184 U. S. 18, 22 Sup. Ct. 293, 46 L. Ed. 413."

Taylor v Robert Ramsay Co et, 114 Atl. 830, at p. 834.

In the instant case, the parties, by their conduct and their pleadings, conceded that the injuries of plaintiff were sustained in such manner and in such location as to bring the case within the jurisdictional scope of the Industrial Commission of Ohio; they, without objection, permitted said commission to assume jurisdiction of the subject-matter, which, under the facts as conceded, it had a right to do, and to proceed to an adjudication of the rights of the parties; they complied with the orders of said commission, and made and received payments in accordance therewith for a period of more than six years; they attempted to make a lump sum adjustment in conformity to the commission's rules; and not until the lapse of more than nine years was any attempt made to challenge the jurisdictional right of said commission to adjudicate the question at issue between said parties. Concluding, as we do, that the defendant was, at the time of the hearing before the Industrial Commission upon the application for a modification of award and for further compensation, estopped to raise the judisdictional question, we pass now to the question of whether the parties may, by contract, be controlled by the pro-

visions of the Workmen's Compensation Act of Ohio.

The Supreme Court of Ohio, in the case of **State ex v Duffy, 113 Oh St 96,** has said:

"Where parties desiring to be controlled by the Workmen's Compensation Act have contracted with reference thereto, and its application will not work prejudice to any characteristic features of the general maritime law, or interfere with the proper harmony or uniformity of that law in its international or interstate relations, such application will not be denied even though the service of the employe is rendered on 'floating vessels in navigable waters,' engaged in building docks, jetties, dredging, driving piles, laying pipes for gas and water, building waterworks cribs and similar work."

If it be true that the parties may, by contract, subject themselves to the jurisdiction of the Industrial Commission of Ohio, as the Supreme Court of Ohio has said, where "the service of the employe is rendered on 'floating vessels in navigable waters'," then in the instant case we believe that the parties had a legal right to submit themselves to the jurisdiction of said commission where the work was done and the injury sustained upon a vessel, in a dry dock built upon the land, and that such submission will not work prejudice to any characteristic features of the general maritime law, or interfere with the proper harmony or uniformity of that law in its international or interstate relations.

Having reached these conclusions, we hold that the trial court committed error in sustaining the demurrer of the defendant, and the judgment of said court is accordingly reversed and said cause remanded for further proceedings according to law.

WASHBURN, PJ, and FUNK, J, concur in judgment.