## HOFFMAN v. NEW YORK, N. H. & H. R. CO.[*]
### No. 65.

Circuit Court of Appeals, Second Circuit.
Dec. 10, 1934.

228

John M. Gibbons, of New York City (E. R. Brumley, of New York City, of counsel), for appellant.

Thomas J. O'Neill, of New York City (Thomas J. O'Neill and William J. Hogan, both of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This is an appeal from a judgment for the plaintiff in an action for personal injuries which he claimed to have sustained while engaged in interstate commerce. The complaint alleges that the defendant negligently maintained and operated a motor car and hand car so as to cause it to derail and injure the plaintiff. The trial was had before Judge Galston and a jury and resulted in a verdict in favor of the plaintiff for $85,000, which was subsequently reduced to $65,000.

On the evening of July 14, 1932, at the defendant's railroad yards at New Haven, Conn., the plaintiff's foreman told him that there were two flat cars on track 14 (the numbers of which were known to plaintiff's colaborer Brooks) which were to be placed the next morning on track 2 in a building in which plaintiff was employed, to be loaded with car wheels to go to Readeville, Mass. In order to do this it was necessary to pull out the hand car involved in the accident, and then put the two flat cars on track 2.

On the morning of July 15, Hoffman, the plaintiff, and a fellow workman Fogler, coupled the hand car on track 2 to a gasoline locomotive which was used in the yard for all kinds of switching. At one end of this gasoline locomotive was an automatic coupler, but in the other end a hole had been bored some 2½ inches in diameter for the purpose of holding a large bolt to which a chain could be attached. An iron bar about seven-eighths of an inch in diameter and 33 to 36 inches long, and having a hook at each end, was used as a makeshift coupler. One of the hooks was inserted in a hole in the frame of the gasoline locomotive and the other in some device on the hand car. In each hook was a small hole in which to insert a cotter pin. The cotter pins used were too small to secure the hooked end in the hole in the locomotive. Therefore the hook in the frame of the locomotive was loose and there was nothing to prevent its springing out upon any unusual movement or jerk of the engine. There were no power brakes on the locomotive. There was a foot brake, but the pedal was broken off. There was a hand brake also, but it would not hold, and there were no brakes on the hand car. Hoffman had complained about the condition of the brakes on the gasoline locomotive to his foreman and told him that they were no good. He got the reply that there was no machinist around at the time, but he would take care of the matter. There had been no repairs to the engine, so far as Hoffman knew, for ten years, when it had been overhauled, when he was foreman, under his direction.

The plaintiff sat on the side of the hand car which had been attached to the gasoline engine by the iron bar and hooks above mentioned. The engine backed the car out from track 2 so as to clear it for the Readeville cars and started to back it into the railroad shop down track 6. The engine was running at about 25 miles an hour, and, when the hand car got 40 or 50 feet from the shop, it "leaped," the hook came out of the hole and shortly thereafter the engine bumped into the hand car, which went off the track and caught the plaintiff between it and the engine. In this way he suffered serious permanent injuries to recover damages for which this action was brought, resulting in a large verdict against the railroad company.

The defendant seeks a reversal of the judgment on various grounds but, first, because shortly after the accident the parties entered into an agreement for compensation under the Connecticut Workmen's Compensation Act (Gen. St. Conn. 1930, § 5223 et seq., as amended), and received payments thereunder up to the commencement of this action amounting to $693.72. It is contended that the award under that act was res judicata, also that there was in addition an accord and satisfaction and that in either event the cause of action is barred. The agreement was approved by the compensation commissioner, was filed in the office of the clerk of the superior court of New Haven county, Conn., and the payments made in accordance with it are unquestioned.

The Connecticut statutes (Gen. St. 1930) contain the following provisions:

"Sec. 5247. *Voluntary agreements.* If an employer and an injured employee * * * shall * * * reach an agreement in regard to compensation, such agreement shall be submitted in writing to the commissioner * * * and, if such commissioner shall find such agreement to conform to the provisions of this chapter in every regard, he shall so approve it. Each agreement thus approved shall be filed in the office of the clerk of the superior court. * * * A copy of such agreement shall be retained by the commissioner, and a like copy delivered to each of the parties, and thereafter it shall be as binding upon both parties as an award by the commissioner. * * *"

The Connecticut courts have held that the compensation commissioner has no right to approve a voluntary agreement unless it conforms to the statute. Fair v. Hartford Rubber Works Co., 95 Conn. 350, 355, 111 A. 193.

Section 5251 sets forth the effect of such an award:

Sec. 5251. *Award of Commissioner* * * *.—"The original award shall be filed in the office of the clerk of the superior court for the county in which the injury occurred. * * * If no appeal from his decision shall be taken * * * within ten days thereafter, such finding and award shall be final and may be enforced in the same manner as a judgment of the superior court. The superior court is authorized to issue execution upon any * * * final award of a commissioner in the same manner as in cases of judgments rendered in the superior court. * * *"

Section 5262 limits the incidence of the Compensation Act as follows:

Sec. 5262. *Interstate Commerce.* "This chapter shall not affect the liability of employers to employees engaged in interstate or foreign commerce, for death or injury,

in case the laws of the United States provide for compensation or for liability for such death or injury."

This last section shows that the Compensation act only relates to injuries to railroad employees when engaged in intrastate commerce. The agreement here contained no mention of interstate or intrastate commerce, but only set forth that the parties had "reached an agreement in regard to compensation for an injury arising out of and in the course of employment and sustained by said employee * * * for which employee claims compensation under chapter 280 of the General Statutes as amended. * * * "

■ A decision of an administrative board that a workman (at the time of an accident) was engaged in intrastate commerce is entitled to full faith and credit and can be no more attacked collaterally than that of a court. Chicago, R. I. & P. Ry. v. Schendel, 270 U. S. 611, 46 S. Ct. 420, 70 L. Ed. 757, 53 A. L. R. 1265; Dennison v. Payne (C. C. A.) 293 F. 333. But there was no such determination by the Connecticut commission unless we assume that the tribunal reached the conclusion that Hoffman was engaged in intrastate commerce because such a conclusion was necessary to afford a basis for approving the agreement and for allowing compensation. The Connecticut decisions, however, establish that no presumption of regularity accompanies the findings of a tribunal of limited jurisdiction in the absence of some evidence in the record that it found the facts upon which jurisdiction depended. Such facts cannot, as in the case of courts of general jurisdiction, be inferred from the mere exercise of jurisdiction. Sears v. Terry, 26 Conn. 273; Hartford v. Poindexter, 84 Conn. 121, 79 A. 79, 83. In the last decision cited, the city of Hartford insisted that introduction in evidence of the final proceedings of its common council, establishing a building line and approving an assessment, carried the implication that the statutory requirements as to notice had been complied with and foreclosed further investigation in a subsequent suit involving the same subject-matter. But the Connecticut Supreme Court held that the municipal authorities were "inferior tribunals" and said that:

"There is no presumption in favor of their jurisdiction as there is in the case of courts of general jurisdiction. * * * The judgments of such courts, taken alone, are entirely disregarded, and the proceedings must show their jurisdiction."

In Coit v. Haven, 30 Conn. 190, 79 Am. Dec. 244, the court stated the rule thus:

"We do not understand that, upon the authorities at home or abroad, there is any contrariety of opinion, that a domestic judgment rendered by a court of general jurisdiction, where no want of jurisdiction is apparent on the record, can not be collaterally attacked. If it be a foreign judgment, or the judgment of a court of limited jurisdiction, or the want of jurisdiction is apparent on the record, it can be collaterally attacked; for then the jurisdiction is not presumed, or the presumption is repelled by the record itself, and the judgment is an absolute nullity if the want of jurisdiction in fact exists."

See, also, Galpin v. Page, 18 Wall. 350, 366, 21 L. Ed. 959; Matter of Doey v. Clarence P. Howland Co., 224 N. Y. 30, 38, 120 N. E. 53; Taylor v. Robert Ramsay Co., 139 Md. 113, 114 A. 830; Pulaski County v. Stuart, Buchanan & Co., 28 Grat. (Va.) 872; Spear v. Carter, 1 Mich. 19, 48 Am. Dec. 688; Wyatt's Adm'r v. Rambo, 29 Ala. 510, 68 Am. Dec. 89; Freeman on Judgments (5th Ed.) §§ 390, 392, 397.

In view of the absence of proof before the commissioner or any findings by him that the plaintiff was engaged in intrastate commerce at the time of the accident, the claim that the approval of the agreement was res judicata as to that matter cannot be sustained.

It has been suggested that a different result was reached in Bach v. Interurban Ry. Co. (Iowa) 171 N. W. 723, 728, O'Brien v. Det Forends Damphibs Selskab, 94 N. J. Law, 244, 109 A. 517, Boyko v. Federated Metals Corporation, 164 A. 462, 11 N. J. Misc. 82, and Pinkston Hardware Co. v. Hart, 159 Okl. 6, 12 P.(2d) 681. But all these decisions were in cases where the parties to proceedings under compensation acts sought to reopen them after the time to appeal had expired and they were held precluded by the adjudications. The question whether the awards could be collaterally attacked was not raised. The decisions have no bearing on the present situation.

■ There was no accord and satisfaction that can bar the present action. The Connecticut compensation statute (section 5226) expressly provides that:

"The acceptance of part B of this chapter by employers and employees shall be understood to include the mutual renunciation and waiver of all rights and claims arising out of personal injury sustained in the course of employment as aforesaid, other than rights

and claims given by part B of this chapter. * * *"

This shows that acceptance of an award under the Compensation Act is a renunciation of other remedies under the state law of Connecticut, but section 5262, which provides that the Compensation Act "shall not affect the liability of employers to employees engaged in interstate or foreign commerce," indicates that the act afforded a remedy which had no relation to employees engaged in interstate commerce and in no way affected their rights. Accordingly the accord here was not a compromise of any right arising under the Federal Employers' Liability Act (45 USCA §§ 51–59) or depending on interstate commerce. The adjustment was only of a local liability, and the statute permitted the compromise of none other. Therefore it was no bar, if the employee was engaged in interstate commerce at the time of the accident. Larsey v. T. Hogan & Sons, 239 N. Y. 298, 146 N. E. 430, is a persuasive authority under the New York Compensation Act. The court held that partial payments under an award in a proceeding where the commissioner had no jurisdiction were not a bar to a subsequent action to recover damages for personal injuries.

■ Upon the facts we have stated, based upon credible evidence, plaintiff was engaged in interstate commerce, for he was helping to clear a track to place on it cars and freight bound for another state. Our decision in Wise v. Lehigh Valley R. Co., 43 F.(2d) 692, is thought to show that there was not enough done to bring the activities of the plaintiff within employment in interstate commerce. In the Wise Case we held that there was no sufficient proof that any car was designated for interstate commerce. But in Pennsylvania Co. v. Donat, 239 U. S. 50, 36 S. Ct. 4, 5, 60 L. Ed. 139, and Louisville & Nashville R. R. Co. v. Parker, 242 U. S. 13, 37 S. Ct. 4, 5, 61 L. Ed. 119, the Supreme Court held that, where one car is moved to reach and move another car in interstate commerce, a workman engaged in the former movement is engaged in interstate commerce. In the latter case Justice Holmes distinguished between "a mere expectation that the act done would be followed by other work of a different character * * * and doing the act for the purpose of furthering the later work." In the case at bar there was evidence that the removal of the hand car from track 2 was "for the purpose of furthering the later work" of interstate commerce and that one of the cars at least was designated for such commerce and was placed on track 2 thereaft-

er and routed to Readeville. The car had been designated by the foreman for track 2, there to be loaded and thence sent forward. We think that the evidence that Hoffman was engaged in interstate commerce was sufficient to support the verdict in his favor.

■ The plaintiff contends that the gasoline tractor was a locomotive and that the lack of adequate brakes, automatic couplers, and equipment upon it and the hand car, and their negligent operation, occasioned his injuries. The cause of action asserted was based upon the failure to meet the requirement of the Safety Appliance Act (45 USCA § 1 et seq.) and the Boiler Inspection Act (45 USCA § 22 et seq.) and upon negligence in running the engine at too high a rate of speed.

The defendant claims that the gasoline tractor and the hand car, whatever may have been their defects, came within none of the requirements of either the Safety Appliance Act or the Boiler Inspection Act.

The Safety Appliance Act provides that:

"It shall be unlawful for any common carrier engaged in interstate commerce by railroad to use on its line any locomotive engine in moving interstate traffic not equipped with a power driving-wheel brake and appliances for operating the train-brake system, or to run any train in such traffic that has not a sufficient number of cars in it so equipped with power or train brakes that the engineer on the locomotive drawing such train can control its speed without requiring brakemen to use the common hand brake for that purpose." 45 U. S. C. § 1 (45 USCA § 1), Act March 2, 1893, 27 Stat. 531.

The act also provides that:

"It shall be unlawful for any common carrier engaged in interstate commerce by railroad to haul or permit to be hauled or used on its line any car used in moving interstate traffic not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars." 45 U. S. C. § 2 (45 USCA § 2), Act March 2, 1893, 27 Stat. 531.

Section 4 of the same act (45 USCA § 4) provides that no car shall be used in interstate commerce, unless otherwise ordered by the Interstate Commerce Commission, that is not provided with secure "grab irons or hand holds."

In 1903, this act was amended so as to extend its application and to provide that the foregoing "requirements relating to train

brakes, automatic couplers, grab irons * * * shall be held to apply to all trains, locomotives, tenders, cars, and similar vehicles used on any railroad engaged in interstate commerce * * * and to all other locomotives, tenders, cars, and similar vehicles used in connection therewith, excepting those trains, cars, and locomotives exempted by the provisions of section 6 of this chapter. * * *" 45 U. S. C. § 8 (45 USCA § 8), Act March 2, 1903, 32 Stat. 943.

It is argued that the gasoline tractor was not a "locomotive," and therefore that it did not have to have a "power driving wheel brake," and that an automatic coupler on a hand car is fantastic and unheard of. But the gasoline engine was frequently used to haul a long line of cars, and there was as much reason for its being equipped to control their movements, as though it had been a steam locomotive employed for a similar purpose. The words of the act "similar vehicles" have already been construed as including an electric engine, and we cannot see how a gasoline tractor employed in interstate commerce differs. Spokane & Inland Empire R. R. Co. v. Campbell, 241 U. S. 497, 36 S. Ct. 683, 60 L. Ed. 1125.

While it may at first seem unreasonable to apply the provisions of the act to a hand car, yet if such a vehicle is to be operated by a locomotive, rather than by hand, we are not inclined to depart from the literal terms of the statute and dispense with the requirement of an automatic coupler. The bumping of an engine against it without anything to protect a man standing between the two is likely to injure him, and the words of the act taken literally require automatic couplers. The right of an employee to recover for injuries in cases where the lack of such a coupler can be regarded as a contributory cause is not to be limited to situations where he is engaged in coupling at the time of the accident. Davis v. Wolfe, 263 U. S. 239, 44 S. Ct. 64, 68 L. Ed. 284. The dictum to the contrary in Geraghty v. Lehigh Valley R. Co. (C. C. A.) 70 F.(2d) 300, 303, made no reference to Davis v. Wolfe, and must therefore be regarded as wrong.

The defendant further argues that sections 6 of the act of 1893 and 2 of the act of 1903 (45 USCA §§ 6 and 9) indicate that the provisions requiring power brakes and automatic couplers are limited to train movements and do not embrace locomotives and cars in yards employed in switching operations. But this is clearly erroneous. The exceptions in section 6 are expressly limited to "logging" trains. The provisions of section 9 relating to trains do not, in our opinion, affect the requirement in the act of 1903, amending the Safety Appliance Act (45 USCA § 8), of brakes, couplers, and grab irons on "all trains, locomotives, tenders, cars, and similar vehicles used on any railroad engaged in interstate commerce." By it the engine was required to have a power brake and the hand car an automatic coupler.

If the foregoing be true, it goes without saying that the provisions of the Boiler Inspection Act, which forbid any carrier to use any locomotive on its line unless all parts and conditions thereof are in proper condition and safe to operate, applied to the case at bar. 45 U. S. C. § 23 (45 USCA § 23), Act June 7, 1924, § 2, 43 Stat. 659.

It is clear that there was proof of defective brakes, a coupling device that was a mere dangerous makeshift, an excessive rate of speed in moving the defectively equipped car, and a derailment and injury to the plaintiff in consequence. There can be no doubt that the plaintiff made out a case.

The defendant assigns various errors because the court refused formally to withdraw certain claims from the jury when there had been a failure to prove that the hand car was "wobbly," that the track was defective, and that the gas car had a defective sanding apparatus. But the court did charge that it knew of no proof of these items of negligence. This was enough to prevent consideration by the jury. The error, if any, was not, in our opinion, prejudicial.

Error is also assigned because of failure to charge that the plaintiff could not recover unless he was engaged in interstate commerce and unless the violations of the Safety Appliance and the Boiler Inspection Acts were proximate causes of his injuries. We are satisfied, however, that these very things were embodied in the main charge and that there was no error in declining to reiterate them in a different form. It seems to us quite inconceivable that the jury did not fully understand that the plaintiff could only recover if they were satisfied that he was engaged in interstate commerce at the time of the accident and that the acts of negligence found to exist were the cause of his injuries.

We have considered the alleged errors committed on the trial in the admission and exclusion of evidence and regard them as without merit.

The judgment is affirmed.