**Maurice J. HEDDERMAN, Plaintiff,**

v.

**STATEN ISLAND RAPID TRANSIT OPERATING AUTHORITY, Defendant.**

**No. 83 Civ. 1508.**

United States District Court,
E.D. New York.

Sept. 20, 1984.

**1142**

Ira Maurer, Elkind, Flynn & Maurer, P.C., New York City, for plaintiff.

Robyn Grayson, William E. Rosa, Brooklyn, N.Y., for defendant.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

This is a case of first impression in which defendant Staten Island Rapid Transit Operating Company ("SIRTOA") challenges the existence of federal subject matter jurisdiction over it in a suit brought under the Federal Employers' Liability Act, 45 U.S.C. §§ 51–60 ("FELA"). Plaintiff brought this action to recover $500,000 in damages for personal injuries allegedly sustained by him on December 22, 1982 while he was working as a conductor on one of defendant's passenger trains.

Defendant moves for summary judgment based on arguments that (1) this Court lacks subject matter jurisdiction because defendant Staten Island Rapid Transit Operating Authority is not subject to FELA; and (2) even if SIRTOA is subject to FELA, the nature of plaintiff's work for defendant removes him from the scope of the FELA. For the reasons set forth below, defendant's motion for summary judgment is denied in its entirety.

*Background*

Section 51 of Title 45 of the United States Code describes the kinds of employers and employees who are covered by FELA. That section provides in pertinent part:

Every common carrier by railroad while *engaging in commerce between the several States or Territories, or between any of the States and Territories,* or between the District of Columbia and any of the States or Territories, or between the District of Columbia or any of the States or Territories and any foreign nation or nations, shall be liable in damages to any person suffering injury while he is employed by such a carrier in such commerce ... for such injury ... resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

Any employee of a carrier, *any part of whose duties as such employee shall be the furtherance of interstate or foreign commerce; or shall in any way directly or closely and substantially, affect such commerce* as above set forth shall, for the purposes of this chapter, be considered as being employed by such carrier in such commerce and shall be con-

sidered as entitled to the benefits of this chapter.

(emphasis added). Defendant challenges jurisdiction under FELA, urging that SIRTOA does not engage in interstate commerce as required by the first paragraph of § 51, nor does plaintiff carry out any duties which further or affect interstate or foreign commerce as described in the second paragraph of that statute.

An overview of the history and function of SIRTOA is helpful to an understanding of defendant's arguments, and is detailed in the affidavit of Lawrence G. Reuter, who has acted as General Superintendent of SIRTOA since June 25, 1983.

Prior to 1953, the Staten Island Rapid Transit Railway Company ("SIRT"), a subsidiary of the interstate Baltimore & Ohio Railroad ("B & O"), operated three passenger lines on Staten Island. In 1953, SIRT discontinued operation of the north shore and east shore lines, and maintained only the 14.5 mile line between St. George and Tottenville. In November 1956, SIRT leased the St. George-Tottenville Line to the City of New York ("the City") pursuant to an agreement whereby the City agreed to continue operation of the passenger line and obtained an option to purchase it.

In July 1970, the City exercised its option to buy the St. George-Tottenville Line and, in turn, leased the line to SIRTOA. SIRTOA asserts that this line operates exclusively *intra*state as a passenger service, and carries no freight or passengers across state lines. Furthermore, defendant claims that SIRTOA does not connect with any interstate passenger carrier. Thus, defendant argues, SIRTOA does not engage in interstate commerce and is therefore not subject to FELA jurisdiction.

Plaintiff asserts, however, that defendant is engaged in several types of interstate activity which warrant the applicability of FELA. For example, plaintiff notes the daily use of SIRTOA's lines by New Jersey commuters. The most apparent connection between SIRTOA and interstate commerce, however, arises from the contin-

ued operation of a SIRT freight train over trackage operated by SIRTOA.

In particular, plaintiff urges that SIRTOA's inspection, maintenance and supervision of SIRT's daily freight train constitutes activity in interstate commerce, as do the profits which SIRTOA derives from the operation of the SIRT train. Defendant admits that it maintains the tracks used by the SIRT freight train, which are the same tracks over which the SIRTOA line operates, but protests that the SIRT freight service has declined to a point where it has no impact on interstate commerce. Defendant states that SIRT presently operates one three or four car freight train which runs only once or twice monthly. SIRTOA further claims that it shares neither personnel nor equipment with the SIRT freight service. The trackage used by SIRT allegedly requires no additional maintenance by SIRTOA because the maintenance standards for freight service are less stringent than those required for SIRTOA's passenger service.

Defendant also claims that the revenue it derives from SIRT's freight service is minimal. SIRTOA's alleged revenues from the operation of this service for the fiscal year ended June 30, 1979 allegedly amounted to $5,028. At the end of subsequent fiscal years, these revenues declined as follows: 1980—$4,134; 1981—$2,055; 1982—$729.12; and 1983—$305. These figures allegedly represent a small fraction of SIRTOA's revenue when compared with the large sums resulting from operation of the intra-borough passenger line. Reuter Aff. ¶¶ 9–13.

Assuming *arguendo* that FELA applies to SIRTOA, SIRTOA urges that *plaintiff* is not covered under FELA pursuant to the second paragraph of 45 U.S.C. § 51, *supra*, because he allegedly did not carry out any duties in the furtherance of or directly or closely and substantially affecting interstate or foreign commerce. In an affidavit submitted at oral argument of this motion, SIRTOA Superintendent of Operations and Maintenance John Russell attests that since plaintiff became employed by SIR-

TOA in 1973, his responsibilities as a trainman and conductor have included opening and closing doors, calling out station names, assisting passengers and maintaining order and collecting fares on board passenger trains. Mr. Russell states that plaintiff is not involved in any activity in furtherance of interstate commerce.

In his affidavit, plaintiff states that although at the time of his injury he was working as a passenger conductor, he has always been subject to being ordered by SIRTOA's crew dispatcher to work as a conductor on "work trains" or on a switching crew that supervises the transfers of empty trains. Plaintiff states that one of the functions of the work trains is to deliver ballast, ties and rails for maintenance of the two sets of tracks used by both the SIRT and SIRTOA trains. In his examination before trial, plaintiff stated that his responsibilities included supervising movement of the passenger trains, work trains and moving "crippled" trains so that both SIRTOA and SIRT trains could be operated properly. Plaintiff's Memorandum of Law in Opposition, Exh. 3, Tr. 54–55.

Plaintiff also submits the affidavit of Ronald Michaels, a third rail helper and maintainer for SIRTOA since 1979, who states that SIRTOA employees have always been responsible for the inspection and maintenance of the tracks and surrounding area which service both SIRT and SIRTOA trains. Mr. Michaels denied knowledge of any such work by any employees of SIRT or B & O, but did not comment on plaintiff's work activities.

*Discussion*

### A. Applicability of FELA to SIRTOA

Particularly helpful with regard to SIRTOA's assertion that it is not a FELA employer is *Staten Island Rapid Transit Operating Authority v. Interstate Commerce Commission*, 718 F.2d 533 (2d Cir. 1983) ("*SIRTOA v. I.C.C.*"), in which the appellate court affirmed the trial court's determination that SIRTOA was a carrier within the meaning of the Interstate Commerce Act ("ICA") and Railway Labor Act ("RLA"). In so doing, the district court had upheld the jurisdictional determination made by the I.C.C. in *Brotherhood of Locomotive Engineers v. Staten Island Rapid Transit Operating Authority*, 360 I.C.C. 464 (1979) ("*B.L.E. v. SIRTOA*").

Under the RLA, a carrier is defined, in pertinent part, as "an express company, sleeping car company, carrier by railroad, subject to the Interstate Commerce Act...." 45 U.S.C. § 151.[1] The relevant portion of the Interstate Commerce Act ("ICA") states that its provisions shall not apply to "the transportation of passengers or property, or the receipt, delivery, storage, or handling of property, *entirely in a State* (other than the District of Columbia) and not transported between a place in the United States and a place in a foreign country except as otherwise provided in this subtitle...." 49 U.S.C. § 10501(b)(1) (Supp.1984) (emphasis added).[2] Thus, like FELA, the ICA excludes from its coverage carriers which carry out purely intrastate activities.

In the instant case, SIRTOA alleges that its connection with interstate commerce, i.e., its relationship with SIRT, is too tenuous to bring SIRTOA within the ambit of FELA. In *B.L.E. v. Sirtoa*, the I.C.C. rejected this argument when it found that SIRTOA was subject to the RLA and ICA. SIRTOA had argued that its relationship with interstate commerce was "tenuous" and resulting "solely from the granting by the City to SIRT of trackage rights for the latter's freight operation, which is minimal at the present time." 360 I.C.C. at 471. The Commission found that in spite

---

**1.** The RLA definition of carrier is much more detailed, but such detail is not relevant to the instant motion.

**2.** The language of the provision of the ICA discussed in *SIRTOA v. I.C.C., supra*, differed slightly from that set forth in the text accompanying this note. 718 F.2d at 539 n. 4 (citing 49 U.S.C. § 1(2)(a)). However, § 10501(b) differs in substance from the old provision only due to its exclusion of the District of Columbia. *See* Historical and Revision Notes Accompanying 49 U.S.C. § 10501(b).

of this contention, SIRTOA's obligation to maintain the SIRT line pursuant to the trackage rights arrangement rendered SIRTOA subject to the RLA and the ICA.

In affirming the I.C.C.'s determination, the Second Circuit stated:

> While it is true that SIRTOA's primary function with respect to the St. George/Tottenville line is to operate local passenger service, which is exempt from the ICA, we do not find improper the Commission's determination that SIRTOA's concurrent responsibilities for maintenance of the line for interstate service brings it within the I.C.A. Indeed, as the Commission found, SIRTOA not only has the express obligation to maintain the line for this purpose, but it also has a latent duty under the current certificate of public convenience and necessity to furnish that freight service which is provided by SIRT under the Trackage Rights Agreement.

*SIRTOA v. I.C.C., supra,* 718 F.2d at 539 (footnote and citations omitted). While it is apparent that SIRT freight operation has decreased since the Second Circuit's decision,[3] the same policies set forth in that decision support the result that FELA should be applicable to SIRTOA in the instant case. *See United Transportation Union v. Long Island R.R.,* 634 F.2d 19, 23 (2d Cir.1980), *rev'd on other grounds,* 455 U.S. 678, 102 S.Ct. 1349, 71 L.Ed.2d 547 (1982) (*"UTU v. LIRR"*) (where intrastate common carrier was held subject to RLA despite declining proportion of freight business, which contributed only a "fraction" of carrier's revenues, court held that "any change in the regulation of this type of carrier must be left to Congress").[4]

### B. *Applicability of FELA to Plaintiff*

As set forth *supra* at 1142, FELA is applicable only to employees, any part of whose duties are related to interstate commerce. It is undisputed that the 1939 amendment to FELA eliminated the necessity of demonstrating that at the "moment of injury," the plaintiff was engaged in acts in furtherance of interstate commerce. 45 U.S.C. § 51. Rather, the plaintiff-employee need only prove that his duties are connected with interstate commerce. While defendant contends that plaintiff's responsibilities are connected only with operation of passenger trains and thus not in furtherance of interstate commerce, *supra* at 1144, plaintiff has stated that he was also subject to being ordered to work on work trains which are involved with maintenance over the tracks used by both SIRT and SIRTOA. *Id.*

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment may only be granted in the absence of a genuine issue of material fact and if the moving party is entitled to judgment as a matter of law. The above contentions raise a genuine issue of the nature of plaintiff's connection with interstate commerce. Viewing the facts presented in the light most favorable to the party opposing summary judgment, *see Burtnieks v. City of New York,* 716 F.2d 982, 985–6 (2d Cir. 1983), it is clear that plaintiff would fall under the protection of FELA if he were involved with the maintenance of tracks used by SIRT for interstate transportation. *See, e.g., Hoffman v. New York, New Hampshire & New Jersey Ry. Co.,* 74 F.2d 227, 231 (2d Cir.) *cert. denied,* 294 U.S. 715, 55 S.Ct. 513, 79 L.Ed. 1248 (1934) (employee who helped to clear tracks for rail cars

---

**3.** In *SIRTOA v. I.C.C.,* the Second Circuit stated that SIRT's freight operation consisted of one five-car train daily, five days per week, which served the Nassau Smelting Company. 718 F.2d at 536. In the instant case, SIRTOA alleges that SIRT service is much less frequent at the present time. *See supra* p. 1143.

**4.** The principle stated parenthetically is *dictum* from the circuit court opinion in *UTU v. LIRR,* where after determining that the LIRR was a carrier within the meaning of the RLA, the

court held that the Tenth Amendment prohibited the LIRR from being subjected to that Act. The Supreme Court reversed on the Tenth Amendment issue, without addressing the circuit court's discussion on the "carrier" issue. In *SIRTOA v. ICC, supra,* the Second Circuit relied on the Supreme Court's ruling in *UTU v. LIRR* in holding that the RLA preempts the anti-strike provisions of New York's Taylor Law, N.Y.Civ. Serv.L. §§ 210–211 (McKinney 1983).

**1146**

bound for other states held engaged in interstate commerce); *Miller v. Central Railroad Co.*, 58 F.2d 635, 637-8 (2d Cir.), *cert. denied*, 287 U.S. 617, 53 S.Ct. 18, 77 L.Ed. 536 (1932) (employee who cleared tracks which were used for both intrastate and interstate transportation carried on activity in interstate commerce).[5]

*Conclusion*

For the reasons set forth above, defendant's motion for summary judgment is denied in its entirety.[6]

SO ORDERED,

---

**5.** Both *Hoffman* and *Miller* were decided before the 1939 amendment to FELA, which did away with the "moment of injury" requirement. *See supra* p. 1145.

**6.** It is interesting to note that defendant's own Director of Finance and Administration stated in a form sent to Blue Cross/Blue Shield:

The Operating Authority personnel are not under the jurisdiction of the Workmen's Compensation Law; they are under the Federal Employer's [sic] Liability Act, and as such have the right to sue the Authority.

Plaintiff's Memorandum of Law in Opposition, Exh. 5. In fact, counsel for both parties to this action could not point to any decisions in SIR-TOA's fourteen-year history in which the authority challenged FELA jurisdiction. *See, e.g., Brusco v. SIRTOA,* 47 A.D.2d 833, 368 N.Y.S.2d 462 (2d Dep't 1975) (jury verdict in state court FELA action by a passenger conductor reversed on excessiveness).