## WYATT v. NEW YORK, O. & W. R. CO.*
### No. 44.

Circuit Court of Appeals, Second Circuit.
Dec. 8, 1930.

*Certiorari denied 51 S. Ct. —, 75 L. Ed. —.

706

Watts, Oakes & Bright, of Middletown, N. Y. (Abram F. Servin, of Middletown, N. Y., of counsel), for appellant.

Alfred T. Rowe, of New York City (Sol Gelb, of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge.

The first contention of the appellant asserts that the plaintiff was not employed in interstate commerce at the time of the accident, and assigns error to the court's denial of defendant's motion to dismiss the complaint upon that ground. The facts bearing on this issue were substantially undisputed. Plaintiff was a brakeman in the employ of the railroad, and, on the evening of November 14, 1928, was engaged as one of a train crew which was making up an interstate freight train in appellant's switchyard at Middletown, N. Y. The train was being made up upon switch track No. 5. There were cars upon track 6 and a caboose upon track 7 to be picked up by the yard engine, pushed onto track 5, and coupled to the rest of the train. Plaintiff's work was to let off the brakes when the cars were picked up. This he had done for the cars picked up on track 6. His next duty would be to assist in shifting the caboose from track 7 after the string of cars from track 6 had been pushed onto track 5 and coupled to the portion of the train already there. This operation would take a little time, and plaintiff in the mean time went to a nearby "dugout" to get warm. This was a small shanty or lean-to, containing an improvised stove which the trainmen were accustomed to keep heated with coal which could be gathered along the tracks. At the dugout, plaintiff found the conductor of his train, who told him to put more coal on the fire and then to assist in shifting the caboose on track 7. Plaintiff took a shovel, and, without his lantern, went onto the tracks to get coal. While scraping up coal on track 5, he was struck by the yard engine, which he testified backed down upon him without sounding the customary signal and without carrying the customary light upon the rear of the tender. The injury necessitated amputation of plaintiff's leg.

The argument of appellant is that at the moment of the accident the plaintiff was not engaged in work connected with the movement of an interstate train, but was doing something solely for his own comfort and that of other employees who might rest in the shelter between orders. We cannot accede to this contention. Plaintiff's work in assisting to make up the interstate train had not ended; there was merely a pause in his active duties. This distinguishes Erie R. R. Co. v. Welsh, 242 U. S. 303, 37 S. Ct. 116, 61 L. Ed. 319, relied upon by appellant. During that pause he was at liberty to go to the dugout for shelter, to build or keep up a fire for his comfort, and to gather coal for that purpose in the customary manner, without changing the character of his interstate employment. Nothing in such conduct would be inconsistent with his duty to his employer. As was said in North Carolina R. Co. v.

Zachary, 232 U. S. 248, 260, 34 S. Ct. 305, 309, 58 L. Ed. 591, Ann. Cas. 1914C, 159, a stronger case for the railroad than the present, "the man was still 'on duty,' and employed in commerce, notwithstanding his temporary absence from the locomotive engine." Other authorities in plaintiff's favor are Chicago M., St. P. & P. R. R. Co. v. Kane, 33 F.(2d) 866 (C. C. A. 9); Baltimore & O. R. Co. v. Kast, 299 F. 419 (C. C. A. 6); Brock v. C., R. I. & P. Ry. Co., 305 Mo. 502, 266 S. W. 691, 36 A. L. R. 891; Philadelphia B. & W. R. R. Co. v. Smith, 250 U. S. 101, 39 S. Ct. 396, 63 L. Ed. 869. None cited by appellant appears contra. As the facts were undisputed, the court might have ruled as a matter of law that plaintiff was engaged in interstate commerce. Certainly leaving the issue to the jury under the instruction given was not prejudicial to defendant.

■■ It is another question whether the defendant owed plaintiff any duty in regard to warning him of the approach of the engine. At the moment he was not doing anything in his employment, but something which concerned his own comfort and that of his fellow employees. However, the practice of gathering fallen coal for the dugout fire was of long duration—certainly long enough to charge the defendant with notice of it. The conductor told Wyatt to get coal for the fire. There was implied, if not express, permission given him to go upon the tracks for this purpose. We hold that employees who are rightfully upon the tracks are entitled to the benefit of this rule, even though not at the moment engaged in work for the company. Hence, defendant owed plaintiff the same duty of care as though he were directly engaged in moving its cars; and a failure to sound the cautionary signal required by the rule was a violation of that duty. It is urged that he voluntarily placed himself in a position of danger with full knowledge that the engine would shortly back down upon track 5, and therefore, was obliged to rely upon his own watchfulness to keep out of its way. Aerkfetz v. Humphreys, 145 U. S. 418, 12 S. Ct. 835, 36 L. Ed. 758; Chesapeake & Ohio Ry. v. Nixon, 271 U. S. 218, 46 S. Ct. 495, 70 L. Ed. 914; Toledo, St. L. & W. R. R. Co. v. Allen, 276 U. S. 165, 48 S. Ct. 215, 72 L. Ed. 513. But this court is committed to the doctrine that those decisions are inapplicable when the railroad violates its own rule requiring the ringing of the engine bell when the engine is about to move. Pacheco v. N. Y., N. H. & H. R. R. Co., 15 F.(2d) 467 (C. C. A. 2).

■ The plaintiff claimed also a violation of the Boiler Inspection Act (45 USCA §§ 23, 24) by operating the engine without the rear light required by the rules of the Interstate Commerce Commission. Such rules were introduced in evidence over the objection of defendant, and this is assigned as error as a variance from the pleadings. Of course there was no need of pleading the statute. Missouri, Kans. & Tex. Ry. v. Wulf, 226 U. S. 570, 33 S. Ct. 135, 57 L. Ed. 355, Ann. Cas. 1914B, 134. Nor could there have been any surprise in respect to the offered rules, for the bill of particulars referred to "the usual and customary rule" relating to lights on a yard engine engaged in switching.

Hence we find no error in the judgment unless it can be predicated upon the agreement now to be discussed.

Appellant introduced in evidence an agreement, set forth in full in the margin,[1] by which the railroad agreed to pay compensation in accordance with the provisions of the New York Workmen's Compensation Law (Consol. Laws N. Y. c. 67) and Wyatt agreed to waive any other rights or remedies and to accept payment of such compensation in satisfaction thereof. Pursuant to this agreement, the railroad paid him compensation at the rate of $25 per week from the date of his accident up to October 1, 1929. Thereafter payments were tendered by appellant every two weeks up to the time of

[1] Memorandum of Agreement made this 8th day of December, 1928 between the New York, Ontario and Western Railway Company, of the first part, employer, and William W. Wyatt, of Middletown, New York, of the second part, employee.

First. We hereby waive any and all rights or remedy we have or might have under any Federal or other law for personal injuries sustained by said employee in the course of his employment, and hereby elect to receive and to pay compensation for such injuries strictly in accordance with the provisions of the Workmen's Compensation Law.

Second. We agree that the facts herein stated are the basis of this settlement under said law.

1. Date of accident November 14, 1928.

2. Place Middletown, N. Y.

3. Cause of accident was scraping up coal for use in shack when he was struck by tank of Engine 55 and wheels passed over right leg.

4. Nature and extent of injury Right leg crushed making it necessary to amputate it below knee; scalp wound, and abrasion of left leg.

5. Wages per day $6.62.

6. Compensation per week $25 at present.

7. Amount paid at this time 4 weeks, Nov. 14 to Dec. 11, Inc., 1928, $100.

8. Will further compensation be paid Yes. Number of weeks and weekly compensation to be determined later by Referee after examination by Doctor chosen by Labor Department.

Third. We further agree that the payments so made shall constitute a full and complete accord and satisfaction of any and all claims arising out of the injuries aforesaid. In presence of

New York, Ontario & Western Railway Company

By George Marsden, Claim Agent.

William Warren Wyatt, Employee.

708

trial, but Wyatt refused them and returned appellant's checks.

This agreement was relied upon as a release and discharge of the cause of action sued on; and, to avoid the effect of it, Wyatt sought to prove that he had not read it and had been deceived as to its contents by the railroad's assistant claim agent who procured his signature. This issue was submitted to the jury on what appellant contends was insufficient evidence to justify its submission. We do not, however, find it necessary to consider this question.

It must be noted that the agreement does not in terms "release" plaintiff's rights of action; it "waives" them and declares the election of the parties to receive and to pay compensation in accordance with the provision of the New York Workmen's Compensation Law (Consol. Laws N. Y. c. 67). It is obviously drawn with a view to the language of section 113 of that act, which provides:

"That awards according to the provisions of this chapter may be made by the board in respect of injuries subject to the admiralty or other federal laws in case the claimant, the employer and the insurance carrier waive their admiralty or interstate commerce rights and remedies."

It is an agreement that the parties (the railroad is said to have been its own "insurance carrier") will apply to the board for an award and that payment of compensation, prior to the award, will be made at the rate of $25 per week, and, after the award, at the rate and for the period fixed by the award. Wyatt repudiated this agreement before any action was taken by the board. Consequently the question arises whether, assuming it was not impeached for fraud, the mere making of the agreement operated as a release and discharge of his rights of action under federal laws:

Ordinarily an executory contract constituting an accord is not a bar to an action upon the original claim; "satisfaction," that is, full performance of the contract of accord, is also necessary. If the parties so intend, the contract of accord may itself be taken as a satisfaction and discharge of the original claim; but the intention must be clear, and the presumption is otherwise. See Frankfurt-Barnett Co. v. William Prym Co., 237 F. 21, 27 (C. C. A. 2); Williston Contracts, §§ 1846, 1847. This intendment should be all the stronger in the case of an employer who draws the document and presents it to an employee little versed in the making of contracts. The agreement at bar is certainly not explicit in expressing an intention that it shall itself operate as a discharge of the plaintiff's cause of action. Suppose the railroad had failed to make any payment of weekly compensation after the initial $100; it is far from clear, even if the "third" paragraph be disregarded, that Wyatt was, in such case, to be limited to suing upon the agreement or applying to the board. We should be disposed to say that the "waiver" of rights and remedies was intended to be operative only when the board had made an award. At least so much must be deemed required by the express stipulation of the "third" paragraph that "the *payments* so made shall constitute a full and complete accord and satisfaction." If the accord had been executed to the point of procuring a final award by the board, we will not now say that that might not have been enough to discharge the original claim and to substitute therefor rights under the award. Perhaps such an intention might fairly be found in the agreement at bar; but no performance short of this was enough. Larscy v. Hogan & Sons, 239 N. Y. 298, 146 N. E. 430. Cf. Brassel v. Electric Welding Co., 239 N. Y. 78, 145 N. E. 745; Fitzgerald v. Harbor Lighterage Co., 244 N. Y. 132, 155 N. E. 74.

Judgment affirmed.