### HEAGNEY v. BROOKLYN EASTERN DIST. TERMINAL.

#### No. 249 Docket 21988.

United States Court of Appeals, Second Circuit.

Argued June 8, 1951.

Decided July 30, 1951.

Frank, Circuit Judge, dissented.

Carlton A. Walls, of New York City, for plaintiff-appellant.

Robert E. Curran, of New York City (Thomas P. Curtin, of New York City, on the brief), for defendant-appellee.

Before CHASE, CLARK, and FRANK, Circuit Judges.

CLARK, Circuit Judge.

This is an appeal from a summary judgment dismissing plaintiff's action against his employer under the Employers' Liability and other Federal Acts, 45 U.S.C.A. §§ 1, 51 et seq., on the ground that he had waived the federal remedies by acceptance of awards under the New York Workmen's Compensation Law. It is undisputed that plaintiff accepted payments under the orders of the New York Workmen's Compensation Board, and made no claim under the Federal Acts, until upwards of two years after his injury. The issue considered in some detail below, both on hearing and on rehearing in extensive memoranda by the district judge, D.C.S.D. N.Y., 91 F.Supp. 775, was whether plaintiff could deny waiver under the circumstances shown, including his representation by counsel over a considerable portion of the time, upon his present assertion that he had not understood his federal rights. The greater part of the argument on this appeal has concerned this same issue; but since plaintiff raises the issue of "no accord without satisfaction," we shall examine directly the validity of New York Workmen's Compensation Law § 113, McK.Consol.Laws, c. 67, which gave authority to its Board to proceed in cases of injuries subject to federal laws "in case the claimant, the employer and the insurance carrier waive their admiralty or interstate commerce rights and remedies."

Plaintiff was injured on January 21, 1947, while working as a hostler atop one of defendant's locomotives in the latter's Kent Avenue Yard in Brooklyn, New York. He slipped on some grease, fell to the ground, and was injured. He was hospitalized for twelve days on account of the accident. A few days after he went home he signed a statement for defendant describing the accident and saying: "I have no intention of suing my employer but going to take voluntary compensation."

On February 17, 1947, compensation payments began at the maximum rate allowed

by New York law, $28 a week. A clerk of the New York Workmen's Compensation Board concluded from the papers filed that there might be a question of voluntary compensation, since the defendant was perhaps engaged in interstate commerce. So the carrier was notified of the question and a hearing was set by the Board for May 14, 1947. In the notice given plaintiff it was stated that the "Purpose of Hearing" was "Question of Jurisdiction." At the hearing the Board's referee announced that it concerned the "question of jurisdiction." Defendant's representative then said: "No, we waive that. We are paying the man $28." Defendant also asked plaintiff if he was working, to which the reply was "No," also that he had not filed a claim or written up any papers. Thereupon the referee made a record in usual form entitled "Notice of Decision and Award," which under the section marked "Decision" stated: "Accident, notice, causal relation established. Case continued." The meaning of "continued" as noted on the form was in substance that there would be a continuance of payments at the same rate, with the possibility of later hearing to determine the extent of further disability, if any. Plaintiff received a copy of this notice, as of the others from the Board.

Defendant continued the maximum payments after the hearing until July 15, 1947, when it requested another hearing upon being informed that plaintiff was able to work. Accordingly a finding was made by the Board on July 21 stating that compensation had been paid in full for 23–5/6 weeks, or a total of $667.33, with payments stopped because "claimant able to work." On September 25, plaintiff informed the defendant that he had retained a lawyer, the counsel who continued to represent him up to and through this appeal. Counsel sought another hearing from the Board, which on October 15 rendered a decision ordering the payments to continue at the reduced rate of $25.08 a week. On March 24, 1948, it was again found that compensation had been paid in full and no award was then made "due to failure of claimant to attend hearing." But this was reopened and payments ordered from March 23 to June 18, 1948, at $18 a week, with the direction "carrier to continue payments." A further hearing was held on June 17, with plaintiff and his counsel both present, when one Todd, defendant's master mechanic, testified to the kind of work plaintiff was doing for defendant at the time of the accident. At this time counsel was allowed an attorney's fee of $25. A still later hearing occurred on October 28, 1948, with date of Notice of Decision and Award, November 4; the latter contains the statement, "Continued to early calendar." Plaintiff asserts that his counsel learned of the possibility of the federal claim through casual conversation with another attorney on December 10, 1948. At any rate on January 6, 1949, he notified defendant that he was making claim under the federal law and had the case closed "without prejudice" before the Board, thus saving to his client the opportunity to reappear if for any reason further payments should be required. There appear to have been at least six hearings by the Board—four after the appearance of counsel—and four orders of award, all carried out according to their terms

Defendant by interrogatories asserted, and plaintiff substantially agreed, that it had paid him—through its insurance carrier, Fireman's Fund Indemnity Co.—a total of $2,729.02, of which $2,296.57 was in the form of compensation and the remaining $432.45 for medical expenses and hospitalization.[1] In one of its affidavits defendant also suggests that plaintiff's change of position was because of his observation of "the handwriting on the wall," since it was about to challenge the payments, as plaintiff had been "regularly

---

1. Since the Board's records show that at the time of the June hearing defendant had then paid plaintiff a total compensation of $1,828.57 for 73–1/3 weeks, this would suggest that payments at $18 a week continued until the final hearing.

In asking for a rehearing below, however, plaintiff asserted that there were no payments after June 18, 1948, and the court accepted that view, page 778 of 91 F. Supp.

employed for years since his recovery from this accident," and yet was still claiming compensation "despite his recovery." Defendant further alleges its willingness to make any and all further payments which may be required by any orders of the State Board.

In his complaint herein plaintiff claimed damages in the amount of $80,000 for injuries sustained from his fall. The answer admitted that defendant was engaged in interstate commerce; but, in addition to the usual defenses of denial of negligence and plea of contributory negligence, it asserted waiver under the New York statute. After answer and upon a deposition of the plaintiff taken before trial, the answers to interrogatories, and numerous affidavits, including a transcript of the proceedings before the State Board, all on file, the Judge granted the defendant's motion for summary judgment as indicated above. In addition to the facts as to the participation of plaintiff's counsel in the proceedings from September 25, 1947, until closing of the case before the Board on January 6, 1949, it was established by answers to interrogatories that on September 29, 1947, plaintiff's counsel requisitioned the Board's file containing, inter alia, the information as to the hearing on jurisdiction of May, 1947. Counsel asserts by affidavit that he did not examine the file on this point and additionally that even if he did his client should not be bound. We agree with the trial judge, however, who was willing to accept plaintiff's own claim that he did not understandingly waive his federal rights before he was represented by counsel, but thought that claim no longer tenable once counsel appeared. When counsel came into the case and conducted its prosecution over many months, with obvious success signalized by increased or additional awards, only to raise this issue at a late date when the end of state compensation was apparently approaching, there should no longer be any possible doubt as to the waiver. If there is ever to be any settlement of legal claims we feel that it must be in a case such as this where a claimant before an administrative board is adequately represented by counsel over a long period, during which the rights, potential and actual, of the client are perfectly obvious to anyone with the slightest legal training, and where there is no suggestion of fraud or concealment from the lawyer on the part of the employer. Hence there was no genuine issue as to the fact of waiver, and the only question which remains is as to its validity.

Plaintiff's claim on this point is that in any event waiver is insufficient; there must be an "accord and satisfaction," meaning thereby a "final award" by the Board duly paid and accepted. And he contends that the last act of the Board, closing the case "without prejudice" to further proceedings, does not meet this requirement. For this he cites some cases—hereinafter discussed—more pertinent under the earlier state law. But before we consider New York precedents, we should turn to federal authority, because, after all, that must be prevailing in a matter of federal right.

This is, indeed, made explicit in the Federal Employers' Liability Act § 5, 45 U.S.C.A. § 55, which makes void any "contract, rule, regulation, or device whatsoever" to *exempt* a carrier from liability. In construing the Act the Supreme Court has held that nothing in the Act, and in particular in this section, operates to prevent an otherwise valid release of a claim by a railroad employee. Callen v. Pennsylvania R. Co., 332 U.S. 625, 68 S.Ct. 296, 92 L.Ed. 242. The Court said: "It is obvious that a release is not a device to exempt from liability but is a means of compromising a claimed liability and to that extent recognizing its possibility. Where controversies exist as to whether there is liability, and if so for how much, Congress has not said that parties may not settle their claims without litigation." 332 U.S. at page 631, 68 S.Ct. at pages 298, 299. And while there was dissent in that case the division in the Court was not over the question whether a release should be upheld at all, but as to how the fairness of the release or possible fraud in it should be tested and who should have the burden of proof. That question in itself can hardly arise here when the provisions for the employee's benefit were

those set as fair by the statutory law of the state. This case was expressly recognized in the later case of Boyd v. Grand Trunk Western R. Co., 338 U.S. 263, at page 266, 70 S.Ct. 26, 28, 94 L.Ed. 55, where the Court said: "We there distinguished a full compromise enabling the parties to settle their dispute without litigation, which we held did not contravene the Act," from the restriction on venue of the action, which was held invalid. It is thus clear that "a full compromise enabling the parties to settle their dispute without litigation" is appropriate and valid.

It is desirable to note, too, the continued stress of the Court upon "compromise" in view of the contention here that before we can have some valid adjustment of rights, we must find some sort of satisfaction beyond the many months' payment under Board awards as actually made. Quite in point, therefore, is Professor Corbin's enlightening discussion of compromise agreements and their connection with executory accords. Thus he says: "By thinking and speaking in terms of 'compromise,' the existing befuddlement in regard to 'executory accords' is avoided." 6 Corbin on Contracts § 1268 (1951). Hence, as he points out, there may be a compromise furnishing an agreed-upon substitute for performance which, in turn, may require specific performance, although generally it may be reasonably clear that the parties intend a discharge "only when the compromise performance is rendered." What we must look for, therefore, is a fair compromise whereby the parties settle their dispute in substitution for the litigation permitted by the Federal Acts; there is no mystic significance to be accorded a "satisfaction" upon some assumed "final award." When a state procedure accomplishes just that by agreement of all concerned, it should therefore be at least as valid as a formal release secured on payment of a few hundred dollars. And certainly no invidious distinction should be made so that only a purely temporary injury can be settled in this way, and that any permanent injury is excluded from settlement just because the state process requires continuing payments for the good of the injured employee.

Analysis of the New York cases, we think, re-enforces these conclusions. The statutory addition to § 113 supra adding the provision for waiver came in 1922 and is considered in Fitzgerald v. Harbor Lighterage Co., 244 N.Y. 132, 135, 136, 155 N.E. 74, per Cardozo, J. Discussing the prior cases, he points out that in Brassel v. Electric Welding Co. of America, 239 N.Y. 78, 145 N.E. 745, a final award accepted by the claimant was held an accord and satisfaction, extinguishing a maritime cause for damages for the same injuries, while in Larscy v. T. Hogan & Sons, 239 N.Y. 298, 146 N.E. 430, acceptance of an award not final was at most an accord and not a satisfaction, leaving the cause for damages unextinguished. The latter case would be binding unless the new statute changes the previously existing rule; but "we find it unnecessary to determine whether waiver in accordance with this section would supersede the remedy in admiralty" because a complete waiver involving claimant, employer, and insurance carrier had not been shown. Three judges concurred; Judge (later Chief Judge) Crane filed a dissenting opinion, in which Chief Judge Hiscock and Judge McLaughlin concurred, upholding the validity of the statute in full.

This is the only case in the Court of Appeals considering the statute; it has been accepted, not unnaturally, by later cases, as not impugning the statute. It has been upheld in several cases within admiralty jurisdiction but for the payments made of state compensation awards. Kane v. Morse Dry Dock & Repair Co., 250 App.Div. 888, 295 N.Y.S. 118, appeal dismissed 277 N.Y. 533, 13 N.E.2d 460, motion to amend remittitur denied 277 N.Y. 652, 14 N.E.2d 205; Turner v. Morse Dry Dock & Repair Co., 255 App.Div. 896, 7 N.Y.S.2d 456; Haglund v. Morse Dry Dock & Repair Co., 255 App.Div. 895, 7 N.Y.S.2d 465; Agne v. Morse Dry Dock & Repair Co., 255 App.Div. 897, 7 N.Y.S. 2d 467; Ahern v. South Buffalo Ry. Co., 277 App.Div. 1067, 100 N.Y.S.2d 639. In these cases, as in the one before us, there had been long continued payment and acceptances of awards made by the Board; the courts had no occasion, as we have

none, to determine how much less than the continuous acceptance of officially adjudicated awards actually shown might be sufficient to satisfy the state statute and the federal law.

Our case of Wyatt v. New York, O. & W. R. Co., 2 Cir., 45 F.2d 705, 708, certiorari denied New York, O. & W. R. Co. v. Wyatt, 283 U.S. 829, 51 S.Ct. 353, 75 L.Ed. 1442, is not at all opposed. There we had to deal with an agreement of waiver, which in itself after providing for future payments—in addition to the four weeks already covered—went on to state that the *payments* should constitute a full and complete accord. Further, no award was made, since the claimant repudiated the agreement before any action was taken by the Board. In construing the agreement Judge Swan said: "Ordinarily an executory contract constituting an accord is not a bar to an action upon the original claim; 'satisfaction,' that is, full performance of the contract of accord, is also necessary. If the parties so intend, the contract of accord may itself be taken as a satisfaction and discharge of the original claim; but the intention must be clear, and the presumption is otherwise." To this he cited Williston, Contracts §§ 1846, 1847; now the reference to Corbin on Contracts supra should be added. And stressing that the presumption should be the stronger where the employer draws the document and presents it to an employee little versed in the making of contracts, he held that the contract could not there be construed as itself sufficient to operate as a discharge. Thus the court did not pass upon the effect of a series of awards by the Board fully complied with by the employer and the insurance carrier and accepted by the employee.

Affirmed.

FRANK, Circuit Judge (dissenting).

1. My colleagues' discussion of the "validity" of plaintiff's "waiver" of his "federal remedies" I shall consider later. For I think that, on analysis of my colleagues' opinion, that discussion of "waiver" proves irrelevant to their ultimate conclusion. That conclusion, boiled down, comes to this:

(1) From the time when plaintiff's lawyer participated in the State Board's proceedings, his knowledge of the nature of those proceedings must be imputed to plaintiff.

(2) Therefore, from that time on, plaintiff was in this position: He impliedly agreed to accept, in lieu of his claim under the federal statutes, whatever the Board had already awarded and subsequently would award him as full payment due him from defendant.

(3) Before and after his lawyer's participation, plaintiff received partial awards from the Board.

(4) His agreement, plus payment by defendant of a substantial portion of those partial awards, constituted a release or "full compromise" of whatever he might otherwise have recovered by suit under the federal statutes, and thus constituted a complete defense to plaintiff's present suit.

(5) It is consequently immaterial that the Board has never determined, or purported to determine, the full amount defendant should pay plaintiff.

Points (4) and (5) are novel doctrine. No precedents support them.[2] Undoubtedly, an employee, like plaintiff, can effectively, for a consideration, release his rights under the federal statutes (although the Supreme Court, construing § 5 of F.E.L.A., requires that such a release be most carefully scrutinized).[3] In the Supreme

2. See discussion of New York decisions, infra.

3. Duncan v. Thompson, 315 U.S. 1, 62 S. Ct. 422, 86 L.Ed. 575.
   The courts have laxly applied to employees' releases of claims for personal injuries the doctrines applicable to releases generally, i.e., the courts have been more ready to relieve employees from their releases. See Williston, Contracts (Rev. ed.) § 1551, and cases cited in Ricketts v. Pennsylvania R. Co., 2 Cir., 153 F.2d 757, 766 note 30.

Court case which my colleagues cite,[4] the employee gave a release for a sum which represented the full amount the parties had agreed upon—not a part payment with an understanding that there would be further payments of amounts to be subsequently determined on the basis of facts not yet ascertainable. I assume, *arguendo*, that a release would be good if the parties agreed upon the full amount, the employer made a part payment, and payment of the balance was practically assured.[5] I also assume that it would suffice if (1) the parties agreed that a designated third person should determine the full amount to be paid by the employer for the release, (2) the third person did so determine, and (3) that payment was assured. Suppose, however, the third person announced: "I have determined that the employer shall pay the employee $2,000, in weekly instalments of $25.00, but I have not yet determined whether, or how much, more shall be paid to bring about full payment, and I shall not be able to do so until, after a sufficient lapse of time, I can ascertain the extent of the employee's disability." I think that, in such circumstances, there would be no release or "full compromise" which the employer, if sued pursuant to the federal statutes, could effectively set up as a complete defense. Payment or award of the amount partly determined would yield but a partial defense, *i. e.*, a defense of a part payment to be deducted from the sum which the court might find owing to plaintiff. That here the third person happens to be an official State entity is of no moment, as I shall try to show later.[6]

Although defendant so pleaded and argued the case, my colleagues object to considering it in terms of "accord and satisfaction," despite the fact that this court has thus considered a similar case,[7] and that the highest court of New York has done likewise.[8] But I shall not quibble about terminology. I accept my colleagues' use of the phrase "full compromise" and their suggestion (borrowed from Corbin) that "there may be a compromise furnishing an agreed-upon substitute for performance, although generally it may be reasonably clear that the parties intend a discharge 'only when the compromise performance is rendered.'" For, as my colleagues in effect concede, this revised terminology still calls, in a case like this,[9] for what heretofore has been labeled "satisfaction," *i. e.*, actual performance of the "agreed-upon substitute." In fact, the defendant here has not "performed" the latest partial award, for, as the trial judge found, defendant made no payments pursuant to that award after June 1948. But I pass that point, since *I shall assume, arguendo, that, on the facts here, an award may be regarded as equal to the payment thereof*.[10] But the "agreed-upon substitute" here, I think, must be, at a minimum, a Board award or awards of the amount the Board considers payment in full, *i. e.*, what the New York courts call a "final award." If then we adopt the revised terminology, it is still necessary that defendant prove at least that the Board had made a "final" award—*i. e.*, had reached and announced the conclusion that defendant need pay nothing beyond the payments

---

4. Callen v. Pennsylvania R. Co., 332 U.S. 625, 68 S.Ct. 296, 92 L.Ed. 242.

5. Perhaps, in any event, suit could not be maintained until the employer defaulted in making payment of the agreed balance. See, however, decisions of the highest New York Court, discussed infra. *Cf.* N. Y. Personal Property Law, § 33–a, McK.Consol.Laws, c. 41, not here applicable.

6. See discussion of the New York decisions, infra.

7. Wyatt v. New York, O. & W. R. Co., 2 Cir., 45 F.2d 705.

8. Larscy v. T. Hogan & Sons, 239 N.Y. 298, 301–302, 146 N.E. 430; Fitzgerald v. Harbor Lighterage Co., 244 N.Y. 132, 135, 155 N.E. 74.

9. My colleagues concede in effect that there is a strong presumption, not here overcome, that the parties intended that performance should be a requisite of the discharge. See Wyatt v. N. Y., O. & W. R. Co., 2 Cir., 45 F.2d 705.

10. See, however, the New York cases discussed infra, some of which seen to hold that payment is essential.

named in the award—since otherwise there could be no "full compromise." As that essential element is lacking here, I do not agree that plaintiff has released his right to maintain his suit.

It is clear from the record facts that the Board never did determine that it had awarded all that was due plaintiff. I think the record does not support my colleagues' statement that "the end of state compensation was apparently approaching"; [11] surely such a fact should not rest on allegations in defendant's affidavit but denied in plaintiff's, or be surmised as a basis of a summary judgment.[12] Without doubt, the Board's hearings were never finally concluded. My colleagues' statement that, on March 24, 1948, the Board "again found that compensation had been paid in full" is mistaken; for the Board's records, in evidence here, state that the compensation previously awarded had been paid to that date but that the weekly payments were ordered to be continued as per award." From time to time, as awards were made, the Board's orders "continued" the case. According to the record on this appeal, the Board itself defined "continued" to mean "that there may be further disability and you will be given another hearing to determine the extent of this disability, if any." The undisputed record evidence discloses that, if a full award had been made, the entry would have been "closed," which, according to the Board's definition, "means that *the award is in full settlement of the claim.*"[13] The Board never ordered plaintiff's case "closed" in that manner. Its last entry was "closed without prejudice"; it is conceded by defendant that that entry meant merely a suspension of the case by the Board, with the right, on plaintiff's part, to reopen it to apply for further awards. We do not know what further amount the Board (if its proceedings had not been thus suspended) would have finally awarded. For all we know,

it might have been several thousand dollars additional. Defendant, indeed, maintains that, because of that very suspension, plaintiff may be able to obtain further awards—something he could not do if the Board had already made a full, final, award. Moreover, defendant asserted in its pleadings, and on the motion for summary judgment, and in its briefs on this appeal, that it stands ready to pay all further Board awards; thus defendant plainly does not maintain that the Board has ever concluded that it would not grant more.

The facts, then, are as follows: After a series of partial awards—all of which except the last were paid—but before the Board made an award which it deemed "in full settlement of the claim," plaintiff brought his suit. For reasons above stated, I think those facts do not add up to a release or full settlement.

2. The discussion of "waiver" and of the Board's "jurisdiction" serves, I think, only to confuse the real issue—that of release or full compromise. The Supreme Court has held that a remedy under a state compensation statute cannot validly be substituted for the federal statutory remedies.[14] This ruling a state cannot circumvent by a statute—such as § 113 of the New York Workmen's Compensation Law—expressly providing for a "waiver" of lack of jurisdiction. It would require new federal legislation to validate such a waiver, *i. e.,* to bar an employee from maintaining suit merely because he agreed to abide by whatever the state Board might later award him. Absent such a statute, something more than a "waiver" of lack of jurisdiction is needed—something that measures up to a release or full compromise.

I am not saying that the State's legal rules (statutory or otherwise) concerning releases, compromises, or accords and satisfactions do not apply to plaintiff's rights under the federal statutes.[15] Consequent-

---

11. This statement derives from an affidavit filed by defendant; there it was set forth as a conclusion from the alleged fact that "plaintiff has been regularly employed for years since his recovery from this accident." This was denied in an answering affidavit filed by defendant.

12. See preceding footnote.

13. Emphasis added.

14. New York Central R. Co. v. Winfield, 244 U.S. 147, 37 S.Ct. 546, 61 L.Ed. 1045.

15. Cf. Callen v. Pennsylvania R. Co., 332 U.S. 625, 68 S.Ct. 296, 92 L.Ed. 242.

ly, I would go along with my colleagues' decision, if the New York courts had held that § 113 of the New York statute means that a release, or full compromise, or accord and satisfaction of a claim like plaintiff's arises from (1) an agreement (express or implied) to abide by the Board's awards, together with (2) the Board's issuance of partial awards.[16] But I think those courts have not so held.

Whether the amendment to § 113, made in 1922, was intended to deal with the subject of release or discharge or compromise is highly doubtful. The language of the amendment is that of "waiver" only. Before the amendment, it had been indicated, in Matter of Doey v. Clarence P. Howland Co., 1918, 224 N.Y. 30, 35, 120 N.E. 53, that the state had not empowered the Board to act except in intra-state cases. So the purpose of the amendment seems to have been merely this: If the parties request, the Board has the state's permission to act in maritime and interstate cases; the legal effect of such action was left to the courts. With that in mind, I turn to the New York decisions cited by my colleagues.

Two such decisions were rendered in cases where, on the facts, the amendment of § 113 did not apply. In Brassel v. Electric Welding Co., 239 N.Y. 78, 145 N.E. 745, 746, the Board had made a full, *final,* award, for a short period of disability, and the employer had paid it in full before the employee sued. The court held that these facts precluded his suit. The court said (per Cardozo, J.): "The question is not whether the award has the effect of a binding adjudication. We may assume that it is void, and that, at least while unpaid, it might have been set aside or disregarded. Matter of Doey v. Clarence P. Howland Co., Inc., 224 N.Y. 30, 120 N.E. 53. The question is whether a right of action has survived the collection of the award and the retention of the proceeds." The court went on to say that "The transaction thus resulted in an accord and satisfaction. So viewed, its ef-

ficacy is independent of the jurisdiction of the board to coerce unwilling parties." In Larscy v. T. Hogan & Sons, 239 N.Y. 298, 146 N.E. 430, 431, the parties had agreed that compensation was to be in accordance with the state Compensation Law and as might be awarded by the Board. The Board had made no award. However, the employer had made a part payment and was willing to pay the balance, but the employee had refused to receive it, and had brought suit. The court held the suit might be maintained. It said that the New York statute was inapplicable, and that "The agreement, as part of the procedure under that law, was void, unless vitality can be preserved to it under common-law rules governing contracts. * * * The agreement may have amounted to an accord, but payment only would amount to a satisfaction." The court distinguished its Brassel decision, supra, on the ground that there "The full amount of the award was paid and accepted", so that "even though the award were void, yet the acceptance of the * * * award in full payment" was "an accord and satisfaction." In Fitzgerald v. Harbor Lighterage Co., 244 N.Y. 132, 155 N.E. 74, 75, there had been a submission to the Board; it had made two partial awards, and the case had been placed "on the final adjustment calendar", when the employee brought suit. The court held he could maintain it. It referred to the Brassel case as holding that "a final award when accepted by the claimant is an accord and satisfaction"; it said that, "On the other hand, we held in Larscy v. T. Hogan & Sons, 239 N.Y. 298, 146 N.E. 430, that acceptance of an award *not final* is at most an accord, and not a satisfaction, with the result that the cause of action * * * continues unextinguished".[17] Turning to amended § 113, the court said that, because of lack of proof of waiver, "We find it unnecessary to determine whether * * * this section would supersede the remedy in admiralty." Since Fitzgerald, the highest New York court has never considered § 113.

---

16. Or, perhaps, payment of such partial awards.

17. Emphasis added.

Its three decisions teach the following: A Board award plus receipt of the awarded payments have no effect except as they create a common law release or discharge; aside from amended § 113, nothing less than a final award [18] will result in a common law discharge; whether, under amended § 113, a waiver, coupled with partial awards and even with their payment, has the effect of a common law release or discharge is a question the highest New York court has not answered.

Our court has twice heretofore interpreted the foregoing New York decisions. In Wyatt v. New York & O. W. Ry. Co., 2 Cir., 45 F.2d 705, 708, citing those three decisions, we said: "If the accord had been executed to the point of procuring a final award by the board, we will not now say that that might not have been enough to discharge the original claim and to substitute therefor rights under the award. Perhaps such an intention might fairly be found in the agreement at bar; but no performance short of this was enough." In Hoffman v. N. Y., N. H. & H. R. Co., 2 Cir., 74 F.2d 227, 231, citing the Larscy case we said: "The court held that partial payments under an award * * * where the commissioner had no jurisdiction were not a bar to a subsequent action to recover damages for personal injuries."

The decisions of the lower New York courts sustain discharges in such cases only when there have been *final* awards. In Brancoleone v. Northern Stevedoring Co., Inc., 224 App.Div. 562, 231 N.Y.S. 489, 491 (1st Dept.) after *partial* Board awards, the employee brought suit. The court said: "We think the answer to the question depends in this instance on whether or not there was a final award." Holding that there was not, and citing the Fitzgerald case, the court decided that the employee could maintain suit. The Appellate Division, Third Department, has decided five cases, each involving an effort by an employer, after the lapse of many years, to discontinue, because of lack of Board jurisdiction, payments pursuant to a final award of death benefits to an employee's widow. In Kane v. Morse Dry Dock and Repair Co., 250 App.Div. 888, 295 N.Y.S. 118, 119 (3d Dept.), upon the employee's death, there had been a *final* Board award in 1919 to the widow. After paying the amounts awarded for eighteen years, the employer sought to discontinue payments for want of Board jurisdiction. The court, citing § 113 and the Fitzgerald case, held that the employer had "waived his right to question the jurisdiction * * *." In Haglund v. Morse Dry Dock & Repair Co., 255 App.Div. 895, 7 N.Y.S.2d 465, 466 (3d Dept.), again, upon the employee's death, the Board had made an award of periodical payments of death benefits to the widow. On these facts no further award could have been made, so that the award was final. After paying for about seventeen years, the employer discontinued payments and (to quote the court) "made application to the board to set aside *the award* and dismiss the claim," [19] on the sole ground of lack of Board jurisdiction. The Board's decision denying this relief was affirmed by the court. It cited the Kane case, supra, and referred to § 113, but seems to have rested its decision on "equitable estoppel"; it said that "by the lapse of time the condition of the dependent has changed and all rights and remedies other than herein have been prejudiced and impaired thereby." The same court, at the same time, similarly decided Agne v. Morse Dry Dock & Repair Co., 255 App.Div. 897, 7 N.Y.S.2d 467, saying that "The same questions are involved". It also then decided Turner v. Morse Dry Dock & Repair Co., 255 App.Div. 896, 7 N.Y.S.2d 456, where the question again was the same. In Ahern v. South Buffalo Ry. Co., 277 App.Div. 1067, 100 N.Y.S.2d 639 (3d Dept.), the facts are so inadequately stated, in the one paragraph opinion, that it is difficult to tell just what they were, but perhaps they were the same as in the preceding cases, although there may have been a partial award only. The

---

18. Plus, perhaps, the claimant's acceptance of payment.

19. Emphasis added.

court cited the Haglund case, and spoke of the employer's "gross laches and conduct prejudicial to the widow."

Thus, in all the cases decided by the lower New York courts (with the possible exception of Ahern) there was a final award, *i. e.*, an award of all that the employer was to pay, with nothing more to be awarded. The latest pronouncement is a dictum in Meaney v. Keating, Sup., 102 N.Y.S.2d 514, 519 (Supreme Court, Trial Term, 1951): "It is only the acceptance of a non-final award, made without jurisdiction, which is deemed an accord but not a satisfaction," citing the Fitzgerald and Larscy cases. I think, therefore, that it cannot be said that the New York rule is that, under amended § 113, even payments and receipt of payments, pursuant to *partial* awards, constitute a discharge of plaintiff's claim. Consequently, I would reverse the summary judgment for defendant, and remand the case for trial.