199 F.3d 626 (2nd Cir. 1999)
 JOSE B. REYES, Plaintiff-Appellant,
V.
DELTA DALLAS ALPHA CORP.; OCEAN REEF & GRILL; FLETCHER LEASING CORP.; SEAPORT LINES MANAGEMENT CORP., INC.; SEAPORT LINES, INC.; S.S. ANDREW FLETCHER, IN REM, Defendants-Appellees.
 Docket No. 98-9368
August Term, 1998
 UNITED STATES COURT OF APPEALS
SECOND CIRCUIT
 Argued March 29, 1999
Decided: Dec. 13, 1999
 
 Appeal from judgment of the United States District Court for the Southern District of New York (Schwartz, Judge) granting summary judgment to defendants in seaman's lawsuit, alleging negligence under the Jones Act and unseaworthiness. The Court of Appeals (Leval, J.) vacates the grant of summary judgment.
 Vacated and remanded.
 
 
 1
 ELIZABETH BLAIR STARKEY, Capiello, Hofmann & Katz, New York, NY, for Plaintiff-Appellant.
 
 
 2
 JOHN J. WALSH, Freehill, Hogan & Mahar, New York, NY, for Defendants-Appellees.
 
 
 3
 Before: LEVAL and POOLER, Circuit Judges, MORAN, District Judge.*
 
 
 4
 Judge Pooler dissents by separate opinion.
 
 LEVAL, Circuit Judge:
 
 5
 Plaintiff Jose B. Reyes appeals from the judgment of the United States District Court for the Southern District of New York (Schwartz, J.) granting summary judgment to defendants and dismissing his case.
 
 BACKGROUND
 
 6
 Plaintiff was permanently disabled on July 10, 1989, while working aboard the S.S. Andrew Fletcher (the "Fletcher"), a New York City tour boat. Reyes was employed as a porter, by Delta Dallas Alpha Corp., which operated a restaurant aboard the Fletcher. His duties included transporting supplies from his employer's shoreside restaurant and loading them aboard the ship. He suffered a shoulder injury when he fell while carrying a 150-pound container of ice up a flight of stairs on the Fletcher. He apparently lost his balance when the ship moved and fell backward down the steps. The evidence most favorable to the plaintiff, which we must accept as true on defendant's motion for summary judgment, showed that, for safety reasons, two men were normally assigned to carry the 150-pound container, but that on the day in question, Reyes's usual partner was absent and he was thus obligated to carry the container by himself. A deckhand aboard the Fletcher, Tomas Guity, attempted to steady the container on Reyes's shoulder, but did not share the burden of the weight.
 
 
 7
 In late 1989, Reyes applied for state workers' compensation benefits. He was represented by a workers' compensation attorney in May 1990, when the Workers' Compensation Board conducted the first of seven hearings. Reyes's claim for benefits was not contested, and the hearings involved merely the extent of his injuries and the timeliness of payments. Six of these hearing took place between May 1990 and July 1991. A seventh (at which Reyes was not present) on April 22, 1992 involved efforts to resolve an issue of late payment. Beginning in August 1990, Reyes received benefits as a result of his claim, at a rate of approximately $100 per week.
 
 
 8
 On August 15, 1991, Reyes, acting through a different attorney, notified his employer that he asserted a claim under federal admiralty law and would treat compensation payments received as a set-off. Reyes filed his federal lawsuit on June 16, 1992, naming various defendants, including the ship's owner, its operator, and his employer the restaurant operator. The complaint asserted claims against his employer under the Jones Act, 46 U.S.C. 688 et seq. and for maintenance and cure, and against the owner and operator of the vessel for unseaworthiness and negligence. After the parties conducted discovery, defendants moved for summary judgment on December 19, 1997. Judge Schwartz granted the motion, holding that, by prosecuting his claim for compensation and receiving compensation payments, Reyes waived his rights under the Jones Act as a matter of law. The court also granted summary judgment in favor of the owner and operator of the vessel. Reyes now appeals.
 
 DISCUSSION
 I. Waiver of Rights Under the Jones Act
 
 9
 Reyes contends that the district court erred when it granted summary judgment for his employer, defendant Delta Dallas, on the grounds that Reyes's prosecution of a claim for benefits under New York's workers' compensation system was a waiver of his legal rights under the Jones Act. We agree with the plaintiff, and vacate the grant of summary judgment.
 
 
 10
 In Southwest Marine, Inc. v. Gizoni, 502 U.S. 81, 91 (1991), the Supreme Court held that the receipt of voluntary worker's compensation payments under a federal worker's compensation statute does not bar a subsequent action under the Jones Act, unless the claimant received a formal award from the compensation board settling his claims in their entirety. Though that decision dealt with a different compensation system than the one in question here (in that case, the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. 901 et seq.) we find it instructive as to the circumstances under which a seaman will have been deemed to have waived his Jones Act claims as a matter of federal law. In this case, Reyes accepted voluntary payments from the New York Workers' Compensation Board but never received a formal award settling the matter.[1] Following Gizoni and the maritime authorities upon which it relies, the benefits Reyes received are best analogized to the traditional maritime remedy of "maintenance and cure." As receipt of "maintenance and cure" has not historically barred subsequent tort actions by injured seamen, Gizoni held that receipt of compensation payments also does not. See id. at 91; Simms v. Valley Line Co., 709 F.2d 409, 412 & nn. 3 & 5 (5th Cir. 1983); Grant Gilmore & Charles Black, Law of Admiralty 435 (2d ed. 1975); 4 Larson, Workmen's Compensation Law 90.51, at p.15-507 (1989). Thus, federal law does not treat Reyes's mere receipt of interim compensation payments as a waiver of his Jones Act claim.
 
 
 11
 Nor does New York law make his receipt of compensation payments a waiver of federal maritime rights against his employer. In reaching its decision, the district court relied, at least in part, on section 113 of the New York Workers' Compensation Law, which provides in relevant part:
 
 
 12
 awards according to the provisions of this chapter may be made by the board in respect of injuries subject to the admiralty or other federal laws in case the claimant, the employer and the insurance carrier waive their admiralty or interstate, commerce rights and remedies, and the state insurance fund or other insurance carrier may assume liability for the payment of such awards under this chapter.
 
 
 13
 N.Y. Work. Comp. Law 113 (McKinney 1998). If Reyes's actions triggered waiver of federal maritime rights under section 113, we would be required to consider whether the state statute as applied conflicts with important federal regulatory interests. See South Buffalo Ry. Co. v. Ahern, 344 U.S. 367, 370-71 (1953) (inquiring whether, under facts of that case, section 113 "invade[d] a field foreclosed by governing federal legislation"). As we read that statute and the governing authorities interpreting it, the New York courts would not consider Reyes's actions as a waiver under section 113, because (viewing the evidence in the light most favorable to him) Reyes never "evince[d] an intention to waive redress under the Jones Act." Dacus v. Spin-Nes Realty & Constr. Co., 22 N.Y.2d 427, 430 (1966); see also Pedersen v. Manitowoc Co., 25 N.Y.2d 412, 417 (1968) (no waiver under section 113 "unless there is an express waiver of maritime rights."); Dacus, 22 N.Y.2d at 431 (waiver must be "unequivocal").
 
 
 14
 Both the employer and the court below rely heavily upon this court's decision in Heagney v. Brooklyn Eastern District Terminal, 190 F.2d 976 (2d Cir. 1951). Heagney, however, was decided in 1951, fifteen years before the New York Court of Appeals interpreted section 113 in Dacus and a full four decades before the Supreme Court decided Gizoni. Whether read as a decision interpreting section 113 or as an opinion laying out the standard for establishing waiver as a matter of federal law, Heagney's finding of waiver was based on a different standard than we are now required to apply. Heagney is therefore superseded authority.
 
 
 15
 As the employer did not establish as a matter of law that the plaintiff's acceptance of compensation payments constitutes a waiver of his federal maritime remedies, the district court should not have granted summary judgment on the plaintiff's Jones Act claim.
 
 II. Reyes's Claims Against Other Defendants
 
 16
 The complaint also alleged negligence and unseaworthiness against the owner and operator of the Fletcher. The district court granted summary judgment in their favor. As the defendants never came forward with evidence demonstrating their entitlement to judgment, this was error.
 
 
 17
 In rejecting the unseaworthiness claim, the district court relied on the Supreme Court's decision, in Usner v. Luckenbach Overseas Corp., 400 U.S. 494, 500 & n.18 (1971), that an isolated act of negligence does not establish unseaworthiness. In our view, the court misunderstood Usner in its application to these facts. The negligent act in Usner involved a coworker's negligent operation of a winch and boom. Id. at 495. Because the injury resulted from an "isolated, personal negligent act of the [plaintiff's] fellow longshoreman" and not from "the condition of the ship, her appurtenances, her cargo, or her crew," the Supreme Court ruled that the claim did not fall within the bounds of unseaworthiness. Id. at 500. Here, in contrast, Reyes's best claim does depend on the "condition of the ship, . . . her cargo, [and] her crew."
 
 
 18
 In Waldron v. Moore-McCormack Lines, Inc., 386 U.S. 724, 724 (1967), the Supreme Court held that a vessel can be found unseaworthy if "too few crewmen [are assigned] to perform a particular task in a safe and prudent manner." See Waldron, 386 U.S. at 725, 728 (assignment of two crew members to uncoil rope, a job properly performed by three or four crew, supports unseaworthiness claim); see also Anderson v. Great Lakes Dredge & Dock Co., 509 F.2d 1119, 1120-21 (2d Cir. 1974) (assignment of one crew member to operate winch supports claim for unseaworthiness if plaintiff can establish task required two men); Belle v. Waterman Steamship Co., 1998 WL 9386 (S.D.N.Y. Jan. 13, 1998), at *5-*6 (proper for jury to find unseaworthiness when defendant reduced crew assigned to carry boxes from three to two and required that remaining crew members carry two boxes at a time instead of one). The assignment of a seaman by himself to carry an excessively heavy load up a ship's stairs would fall easily within these precedents. Nor are the defendants helped by the fact that the understaffing was merely temporary as it was customary to assign two porters to the ice detail. Usner made clear that unseaworthiness may be found as to a transitory condition. See Usner, 400 U.S. at 497 & n.8.[2]
 
 
 19
 The same contentions that are sufficient for a claim of unseaworthiness also support a negligence claim. If the assignment of Reyes to carry the 150-pound container up the stairs of the moving ship subjected him to an unreasonable risk of harm, that staffing decision could be the basis for a claim of negligence.[3]
 
 
 20
 Plaintiff also alleged unseaworthiness based on the absence of an elevator or dumb waiter to transport supplies onto the vessel. As the plaintiff presented no evidence as to the unsuitability of the vessel's equipment or of the need for mechanical equipment (as opposed to manpower), the district court's dismissal of this allegation was appropriate.
 
 CONCLUSION
 
 21
 The district court's grant of summary judgment for the defendants is hereby vacated. Case remanded to the district court.
 
 
 
 Notes:
 
 
 *
 The Honorable James B. Moran, of the United States District Court for the Northern District of Illinois, sitting by designation.
 
 
 [1]
 While it is true that Alan Cass, an attorney purportedly representing the plaintiff, petitioned the compensation board for a $30,000 lump sum payment to settle his claims, those actions were taken after Reyes had retained alternative counsel. Reyes claims Cass was no longer representing him at that time. The Gizoni court, in any event, considered receipt of such a payment as the trigger for waiver, not a demand for it.
 
 
 [2]
 Had Reyes's claim of unseaworthiness depended on Guity's negligence in helping Reyes with his load, we would agree with the district court. But, as noted above, the principal complaint of unseaworthiness is unrelated to Guity. It depends on the ship's ordering Reyes to perform a task in a dangerous manner without sufficient manpower. Nor does Guity's presence at the scene, or his effort to help Reyes, necessarily defeat the claim. Guity was not assigned to the task and, more importantly, did not help bear the weight. If the ship was rendered unseaworthy by Reyes's assignment to carry more than he safely could, Guity's effort to steady the load did not eliminate the unseaworthy condition. If the load was too heavy for one seaman to carry safely on the stairs and the stairs were too steep and narrow to permit a second seaman to help bear the weight, those in charge had a responsibility to direct that the load be divided so that it could be carried safely.
 
 
 [3]
 Reyes has alleged negligence against several distinct defendants. It is not at all clear from the record (1) which individuals behaved negligently in ordering or permitting Reyes to carry excess weight and (2) whether, due to the complex business arrangements surrounding the operation of the Fletcher, any of the corporate defendants share responsibility for the actions of the employees of any of the others. On a motion for summary judgment, the burden is on each defendant to show as a matter of law that there is no basis for imposing liability on it. Neither the owner nor the operator made such a showing.
 
 
 
 22
 POOLER, Circuit Judge, dissenting from the majority opinion:
 
 
 23
 I respectfully dissent and would affirm the decision of the district court in its entirety. Based on the undisputed evidence and drawing all reasonable inferences in favor of the non-moving plaintiff, Jose B. Reyes, the district court correctly found that plaintiff waived his Jones Act remedies against employer Delta Dallas Alpha Corp. as a matter of law.
 
 
 24
 The majority relies in part on the Supreme Court's opinion in Southwest Marine, Inc. v. Gizoni, 502 U.S. 81 (1991), to find that Reyes did not waive his Jones Act claims as a matter of federal law because while Reyes accepted voluntary payments from the New York Workers' Compensation Board, he never received a formal award. This reliance is misplaced. As the majority noted, Gizoni dealt with the Longshore and Harbor Workers' Compensation Act ("LHWCA"), a different compensation scheme. The section upon which the majority relies did not hold that no Jones Act waiver is effected until a claimant receives a formal award. Rather, the Supreme Court's holding is more limited. Gizoni merely states that where a claimant's seaman status - and Jones Act eligibility -- remains an open issue, his receipt of voluntary payments under the LHWCA is not a waiver, particularly because the LHWCA "does not comprehend such a preclusive effect" and specifically contains an offset provision in the event that a claimant receives Jones Act recoveries. Gizoni, 502 U.S. at 91-92. The state workers compensation scheme does not contain a similar offset provision but instead contains language regarding the preclusive effect of receiving benefits. See N.Y. Work. Comp. L. 113 (McKinney 1998).
 
 
 25
 The majority disregards federal precedent directly on point. The district court correctly relied on Heagney v. Brooklyn E. Dist. Terminal, 190 F.2d 976, 977-78 (2d Cir. 1951). In that case, an injured seaman filed a workers compensation claim, had counsel appear on his behalf at four out of six benefits hearings, and accepted benefits. We held on these facts that:
 
 
 26
 [i]f there is ever to be any settlement of legal claims we feel that it must be in a case such as this where a claimant before an administrative board is adequately represented by counsel over a long period, during which the rights, potential and actual, of the client are perfectly obvious to anyone with the slightest legal training, and where there is no suggestion of fraud or concealment from the lawyer on the part of the employer.
 
 
 27
 Id. at 978. The facts of Heagney, in which the claimant made no Jones Act claim until two years after his injury, are strikingly similar to the undisputed facts that Reyes presents because (1) Reyes litigated his workers compensation claim with the assistance of counsel over a period of two years; (2) Reyes did not file his federal claim until three years after making a workers compensation claim and two years after he began receiving benefits; and (3) Reyes did not notify his employer of his intent to sue under federal law until two years after making a workers compensation claim and one year after he began receiving benefits.
 
 
 28
 I disagree with the majority's notion that subsequent decisions of the New York State Court of Appeals superseded Heagney. If anything, these decisions reinforced Heagney because they employed the same analysis. The New York Court of Appeals held that "unqualified acceptance of compensation payments over a period of years may constitute a waiver of Federal rights and remedies [but] not every award and acceptance of compensation benefits prevent a claimant from pursuing his Federal rights." Dacus v. Spin-nes Realty & Constr. Co., 22 N.Y.2d 427, 430-31 (1968). See also Pedersen v. Manitowoc Co., 25 N.Y.2d 412, 417 (1969). In each case, the Court of Appeals found that the waiver question raised issues of fact because the injured seamen accepted benefits but also provided their employers with some notice of their federal claims within months of their accidents. Pedersen, 25 N.Y.2d at 417; Dacus, 22 N.Y.2d at 431. The only difference between the New York State cases and Heagney were the facts, which of course resulted in different outcomes. But the standard remained the same. It is this standard that the district court applied correctly to hold that Reyes waived his Jones Act claims as a matter of law.
 
 
 29
 I also would affirm the decision of the district court dismissing Reyes' negligence and unseaworthiness causes of action. The majority opinion declines to acknowledge the deposition testimony of plaintiff himself, who stated that deckhand Tomas Guity could not have done anything to prevent the accident, that the ship's captain could not have prevented the accident because he did not see Reyes below deck, and that the carpet on the stairs was "fine." This testimony precludes recovery both for an unseaworthy condition based on the assignment of crew and common law negligence. I am unpersuaded by the majority's attempt to salvage Reyes' claims in footnote 2 of its opinion based on the fact that Guity was not assigned to the task of helping Reyes. Plaintiff's own testimony clearly shows his belief that the accident would have occurred whether Guity or one of Reyes' coworkers was present.
 
 
 30
 For the foregoing reasons, I respectfully dissent from the majority opinion.