George MOONEY, Plaintiff–Appellant,

v.

The CITY OF NEW YORK, Defendant–Appellee,

Docket No. 99–9062.

United States Court of Appeals, Second Circuit.

Argued: April 11, 2000

Decided: May 22, 2000

As Amended: June 28, 2000

Edward M. Katz, Cappiello, Hofmann & Katz, New York, NY, for Appellant.

Julie Steiner, Assistant Corporation Counsel (Michael D. Hess, Corporation Counsel of the City of New York; Steven Levi, Elizabeth S. Natrella, Ralph Foertsch, of counsel), for Appellee.

Before: NEWMAN, KEARSE, KATZMANN, Circuit Judges.

KATZMANN, Circuit Judge:

George Mooney, plaintiff-appellant, appeals from the amended judgment of the United States District Court for the Southern District of New York (Lewis A. Kaplan, *Judge*), granting summary judgment in favor of the City of New York (the "City"), defendant-appellee. The district court held that an award of workers' compensation benefits constituted a waiver of

a Jones Act claim. For the reasons that follow, we vacate the amended judgment of the district court and remand with instructions for further proceedings.

## I. BACKGROUND

The essential facts are not in dispute except where noted. George Mooney was an employee of the Department of Transportation of the City of New York (the "City") at all times relevant to this action. The City is a self-insured employer. In May 1996, while assigned to work aboard a Staten Island ferry, Mooney slipped and fell on a set of stairs in the engine room. In June 1996, with the assistance of counsel, Mooney filed a claim under the New York State Workers' Compensation Law for alleged injuries to his right leg and back. On June 27, 1996, the City advised the New York State Workmen's Compensation Board (the "Board"), which is established under N.Y. Work. Comp. Law § 142(1) "to hear and determine all claims for compensation or benefits" under that law, that the City would not contest Mooney's right to compensation, provided Mooney submitted prima facie medical evidence and a medical consultant's report. Mooney did so.

Mooney began receiving compensation benefits in November 1996 pending a hearing before the Board, but payments were suspended in December 1996 due to a lack of updated medical evidence. In January 1997, the first hearing involving Mooney's workers' compensation claim was held before a workers' compensation law judge. The judge received evidence regarding Mooney's accident, notice to his employer, his injuries for the period from the accident until January 1997, and the causal connection between the accident and the injuries. The judge determined that Mooney was entitled to workers' compensation benefits from May 17, 1996 to January 15, 1997, less two days he worked, at the rate of $400 per week. He also directed the City to continue payments beyond January

15, 1997 pending further determination, and the City complied.

In May 1997, after a hearing, the Board granted a second award at the same rate to Mooney, covering the period from January 15, 1997 to February 28, 1997, the day Mooney returned to work, and authorized orthopedic consultation. By notice dated March 28, 1997, the City's Workers' Compensation Division, Law Department ("Law Department"), informed Mooney that he had been overpaid $1,680 for the period from February 28, 1997 to March 30, 1997. The same notice indicated that Mooney had received a total award of $16,400 for a temporary disability, and that "compensation for disability [had] been paid in full" because Mooney had returned to work. A second notice from the Law Department to Mooney, dated May 30, 1997, reiterated that he had been overpaid for the period from February 28 to March 2, 1997, and that he had been paid in full.

A third hearing held in December 1997 resulted in no further award, only authorization for a bone scan of Mooney's left leg. The fourth hearing was held in April 1998, when Mooney for the first time alleged injury to his right knee. No additional award was granted but the case was continued to allow Mooney to produce medical evidence of his alleged right knee injury. At the fifth and final hearing in October 1998, it was determined that Mooney had suffered a "12 ½ % SLU [schedule loss of use]" of his left leg. No finding was made regarding the right leg. Mooney did not appeal the closure of his case.

Mooney was represented by counsel at each of the five hearings, although the parties dispute whether his attorney was knowledgeable about federal maritime law and whether the attorney had advised Mooney of his federal maritime rights.

In January 1999, represented by a different attorney, Mooney commenced the present action, asserting causes of action for negligence under the Jones Act and for unseaworthiness under general

maritime law, as well as for a seaman's traditional remedies of maintenance and cure.[1] After discovery, the City moved for summary judgment on the ground that Mooney's acceptance of workers' compensation over a nine-month period, while represented by counsel, together with his failure to appeal timely the closure of his case, constituted an implied waiver of his federal maritime rights.[2]

## A. The district court's decision

By Order dated August 2, 1999, the district court granted the City's motion. On Mooney's motion for reconsideration, the court again held in favor of the City and entered judgment accordingly. The district court relied primarily on *Heagney v. Brooklyn Eastern Dist. Terminal,* 190 F.2d 976 (2d Cir.1951), which dealt with the analogous question of whether acceptance of workers' compensation benefits constituted a waiver of remedies otherwise available under the Federal Employers' Liability Act, 45 U.S.C. § 51 et seq. ("FELA"). The court:

> underst[ood] *Heagney* as adopting the view, essentially policy-based, that the active pursuit of a worker's compensation claim in which the claimant is represented by counsel waives any maritime tort claim without regard to the subjective understanding and intention of the plaintiff.

*Mooney v. City of New York,* No. 99 Civ. 0005, slip op. at 3 (S.D.N.Y. Aug. 25, 1999).

The court found the facts in the present case to be "at least as strong for the defendant as those in *Heagney.*" *Id.* at 2. In particular, the district court found that:

> [w]hile the City did not controvert compensation, payments, after initially commencing were terminated in December 1996. The Workers' Compensation Board subsequently held five hearings ... on issues including the accident, the causal relation between the claimed injuries and the accident, the extent and permanency of the injury, the need for further treatment, and the rate of compensation. Plaintiff was represented throughout by counsel. He obtained resumption of compensation payments after the initial termination and a further series of awards. He did not institute this action until approximately 26 months after first receiving compensation payments, which ultimately totaled over $16,000.

*Id.* Based on these facts, the district court granted summary judgment for the City.

## B. Reyes v. Delta Dallas Alpha Corporation

In December 1999, after the district court's ruling, this Court decided *Reyes v. Delta Dallas Alpha Corp.,* 199 F.3d 626 (2d Cir.1999). The plaintiff in that case, while receiving ongoing voluntary workers'

---

1. Maintenance includes sustenance and a berth while aboard ship and payment for the cost of board and lodging while ashore. Cure refers to proper care of the injured seaman. *See* Martin J. Norris, *The Law of Maritime Personal Injuries* 29–30 (4th ed.1990). Mooney does not appeal the dismissal of his claim for maintenance and cure.

2. The City did not plead waiver as an affirmative defense in its Answer to the Complaint. Ordinarily, "a failure to plead an affirmative defense results in the waiver of that defense and its exclusion from the case." Charles A. Wright & Arthur R. Miller, 5 *Federal Practice & Procedure* § 1278, at 477 (1990); *see United States v. Continental Illinois Nat'l Bank & Trust Co. of Chicago,* 889 F.2d 1248, 1253 (2d Cir.1989). A defendant may move to amend its pleading "to assert an omitted affirmative defense on the written consent of the adverse party or by leave of court, which 'shall be freely given when justice so requires.'" Wright & Miller, *supra,* at 495 (quoting Fed. R.Civ.P. 15(a)). In this case, Mooney responded on the merits of the City's waiver defense without objecting to the assertion of the defense by motion rather than by responsive pleading. Thus, we may interpret Mooney's conduct as an implied consent to file an amended Answer. Alternatively, we may construe the district court's ruling on the merits of the waiver defense as an implied grant of leave to amend the Answer, since Mooney has not alleged any prejudice. In either case, we conclude that the waiver defense has not been waived.

compensation from his employer, notified his employer that he had asserted a claim, presumably with the Board, under federal maritime law and intended to treat the compensation payments as a "set-off." *See id.* at 628. The record did not indicate that either the employer or the Board acted on this claim before the employee filed a subsequent Jones Act suit in federal court. *See id.* On motion by the employer, the district court granted summary judgment dismissing the complaint on the ground that the plaintiff's prosecution of a claim for state workers' compensation benefits amounted to a waiver of his Jones Act rights. *See id.*

On appeal, this Court vacated the district court's judgment, noting that:

> In *Southwest Marine, Inc. v. Gizoni,* 502 U.S. 81, 91, 112 S.Ct. 486, 116 L.Ed.2d 405 (1991), the Supreme Court held that the receipt of voluntary worker's compensation payments under a federal worker's compensation statute does not bar a subsequent action under the Jones Act, *unless the claimant received a formal award from the compensation board settling his claims in their entirety.*

*Id.* (emphasis added). Therefore, the Court held that "federal law does not treat Reyes's mere receipt of interim compensation payments as a waiver of his Jones Act claim." *Id.* at 629.

Furthermore, the Court held that § 113 of the New York Workers' Compensation Law did not bar the maritime action. Section 113 provides, in relevant part, that:

> awards according to the provisions of this chapter may be made by the board in respect of injuries subject to the admiralty or other federal laws in case the claimant, the employer and the insurance carrier waive their admiralty ... rights and remedies. ...

N.Y. Work. Comp. Law § 113 (McKinney 2000). The Court concluded that Reyes's conduct would not be considered as a waiver under New York law because he "never 'evince[d] an intention to waive redress under the Jones Act.'" *Reyes,* 199 F.3d at 629 (alteration in original) (quoting *Dacus v. Spin–Nes Realty & Constr. Co.,* 22 N.Y.2d 427, 430, 293 N.Y.S.2d 83, 239 N.E.2d 718 (1968)).

The Court expressly rejected the employer's reliance on *Heagney,* stating that it was "superseded authority" insofar as it predated *Gizoni* and the New York Court of Appeals' interpretation of § 113. *Reyes,* 199 F.3d at 629. Because the district court's decision in the present case rested heavily on *Heagney,* we vacate and remand for the court to reconsider the City's summary judgment motion in light of *Reyes* and this opinion.

## II. DISCUSSION

### A. *Waiver under federal law*

Our first task is to consider carefully the applicable standard for waiver of maritime claims as a result of an adjudication by a state compensation board. Our starting point is this Court's recent decision in *Reyes.* Initially, we note that the holding of *Reyes* is that the circumstances shown by the record in that case did *not* establish waiver as a matter of law. *Reyes* is thus a more reliable guide for determining when waiver has not occurred than for determining when waiver might occur. We then notice that a key point supporting the *Reyes* holding that waiver had not been established as a matter of law concerned the nature of the benefits that the claimant received. *Reyes* noted, following *Gizoni,* 502 U.S. at 91, 112 S.Ct. 486, and the authorities on which *Gizoni* relied, that the interim benefits Reyes had received "are best analogized to the traditional maritime remedy of 'maintenance and cure,'" receipt of which "has not historically barred subsequent tort actions by injured seamen." *Reyes,* 199 F.3d at 629. It was in the context of noting compensation benefits that did not establish waiver that *Reyes* then suggested that waiver might exist if "the claimant received a formal award settling his claims in their entirety."

*Id.* at 628. This last suggestion could easily be given an unwarranted and overly broad interpretation if it were read to mean that a formal award of compensation benefits, settling the entirety of a compensation claim, will always waive a Jones Act claim. We do not think that the Court in *Reyes*, having ruled that receipt of compensation payments analogous to maintenance and cure do not establish a waiver, could have meant that such payments constitute a waiver simply because they are comprehended in a "formal award." [3] The phrase "formal award" in *Reyes* cannot be divorced from the more significant phrase to which it is attached, "settling his claims in their entirety."

 Thus, we understand *Reyes* to mean that when the circumstances make it clear that a claimant has elected to receive compensation benefits in lieu of all of the claims he could pursue (including a Jones Act claim), a "formal award" and acceptance of such compensation benefits can evidence a waiver of a Jones Act claim. An award of compensation substantially

exceeding interim benefits during a period of unemployment might indicate a waiver, especially if the claimant received such benefits for an extended period of time beyond unemployment without indicating an intention to bring a Jones Act claim. For example, a claimant who received one or more substantial lump sum awards pursuant to § 15(3)(v)[4] of the Workers' Compensation Law or a substantial non-schedule adjustment pursuant to § 15(5-b)[5] may have waived his federal remedies. However, an interim award of compensation benefits that are analogous to maintenance and cure does not establish waiver, even if incorporated in a formal award.

The parties in this case dispute whether Mooney had received a formal award from the Board that bars the present action. The City seeks merely to equate a formal award with a final decision of the Board. It points out that Mooney received notice that his case had been closed, that the $16,400 awarded to him represented payment in full for his disability, and that the decision became final and conclusive when

---

3. We note that the "formal award" language in *Gizoni* was used to focus on an issue different from the issue of whether the amount, duration, and purpose of payments received from a compensation board waived a Jones Act claim. The issue in *Gizoni* concerned the status of the claimant. The Supreme Court, considering whether a favorable adjudication of a claim under the federal Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 901 *et seq.*, barred a Jones Act claim, ruled that the Jones Act claim was barred because LHWCA benefits could be awarded only after a determination that the claimant was not a seaman. *See Gizoni*, 502 U.S. at 91, 112 S.Ct. 486. No comparable determination of status is made by a state compensation board.

4. N.Y. Work. Comp. Law § 15(3)(v) provides, in relevant part, for additional compensation for lost wages in certain permanent disabilities:

Notwithstanding any other provision of this subdivision, additional compensation shall be payable for impairment of wage earning capacity for any period after the termination of an award under paragraphs a, b, c, or d, of this subdivision for the loss or

loss of use of fifty per centum or more of a member, provided such impairment of earning capacity shall be due solely thereto.

5. N.Y. Work. Comp. Law § 15(5-b) provides, in relevant part:

Non-schedule adjustments. Notwithstanding any other provision of this chapter, in any case coming within the provisions of subdivisions three or five of this section, in which the right to compensation has been established and compensation has been paid for not less than three months, in which the continuance of disability and of future earning capacity cannot be ascertained with reasonable certainty, the board may, in the interest of justice, approve a non-schedule adjustment agreed to between the claimant and the employer or his insurance carrier.... The board may, in such case, order all future compensation to be paid in one or more lump sums or periodically, and any such adjustment shall be regarded as a closing of the claim unless the board find [sic] upon proof that there has been a change in condition or in the degree of disability of claimant not found in the medical evidence and, therefore, not contemplated at the time of the adjustment.

Mooney failed to file a timely appeal. Mooney, on the other hand, contends that only the receipt of a lump sum award above and beyond his workers' compensation entitlement should count as a waiver of his federal claims.

We address in this opinion the meaning of "formal award," referred to in *Reyes*, and the circumstances under which the receipt of a formal award constitutes an implied waiver of a Jones Act or general maritime law claim as a matter of federal law. We reject Mooney's definition of formal award and conclude that the City's definition is insufficient.

None of the authorities cited by the *Reyes* court or by the Supreme Court in *Gizoni* defined a formal award. Nor does this term appear anywhere in the New York Workers' Compensation Law. However, the statute provides other guidance. Under the statute, with limited exceptions not applicable here,[6] only the Board is authorized to make compensation awards:

> The board shall have full power and authority to determine all questions in relation to the payment of claims ... and upon application of either party, shall order a hearing, and within thirty days after a claim for compensation is submitted ..., or such hearing closed, shall make or deny an award, determining such claim for compensation, and file the same in the office of the chair.

N.Y. Work. Comp. Law § 20(1). Section 142, entitled "General powers and duties of the workmen's compensation board," provides that the Board is empowered, among other things, to hear and determine all claims for compensation or benefits and to modify or rescind awards. *See id.* § 142(1). The statute also uses the term "award" interchangeably with the term "decision". *See id.* § 23 ("An award or decision of the board shall be final and conclusive upon all questions within its jurisdiction...."). An award by the Board is contrasted with situations where the employer or insurer pays compensation to the claimant directly, "without waiting for an award by the board," because no controversy exists between them. *Id.* § 25(1); *see also* 9 Arthur Larson and Lex K. Larson, *Workers' Compensation Law* § 90.51(a)-(c) (1999) (noting that compensation may be given without the employee ever having filed a claim, upon the filing of a claim but without a Board award, or pursuant to an award); Grant Gilmore and Charles L. Black, Jr., *Law of Admiralty* 435 (2d ed.1975) (same).

▬▬▬ We therefore believe that a "formal award" is a written decision issued by the Board and filed with the office of the Chair of the Board. A decision or award is issued by the Board when it is made by "a member or panel of the board or by a Workers' Compensation Law Judge." N.Y. Work. Comp. Law App. § 300.1(a)(1). Moreover, an award may be formal even if it was made without the benefit of an evidentiary hearing because the Workers' Compensation Law does not mandate a hearing before the Board issues an award. In addition, the award must become final and conclusive, and not subject to further modification, either because the time for administrative and judicial appeals has expired, or because the award has been affirmed on appeal. *See id.* § 23. A commonsense application of this definition is that a formal award may provide for a lump sum payment or a series of payments. We reject Mooney's argument, based on his misplaced reliance on a footnote in *Reyes*, that only a lump sum payment may be deemed a formal award precluding the Jones Act suit. *See Reyes*, 199 F.3d at 629 n. 1. That decision merely explained that a petition to the Board for a lump sum payment was insufficient to trigger a waiver because, under *Gizoni*, only the receipt of payments constitutes a waiver. *See id.* *Reyes* did not suggest, much less hold, that only a lump sum payment could be deemed a waiver.

6. *See* N.Y. Work. Comp. Law § 20(2).

 We emphasize that a complainant's receipt of a formal award constitutes a waiver of his or her federal maritime claims only if the formal award "settl[ed the complainant's] claims in their entirety." *Id.* at 628. This requirement is simply an application of the well-established principles of waiver, which we do not interpret *Reyes* to have altered. We have held, in other situations, that a waiver need not be express, but may be inferred from the conduct of the parties. *See Tray–Wrap, Inc. v. Six L's Packing Co.*, 984 F.2d 65, 68 (2d Cir.1993); *NLRB v. New York Tel. Co.*, 930 F.2d 1009, 1011 (2d Cir.1991). "[T]he conduct said to constitute a waiver must be clear and unequivocal, as waivers are never to be lightly inferred." *Tray–Wrap*, 984 F.2d at 68; *see Banff, Ltd. v. Colberts, Inc.*, 996 F.2d 33, 36 (2d Cir. 1993). We will infer a waiver only where "the parties were aware of their rights and made the conscious choice, for whatever reason, to waive them." *New York Tel.*, 930 F.2d at 1011. Moreover, the party asserting an implied waiver as a matter of law carries the burden of proving that these requirements have been met. *See id.* (Party asserting waiver "bears the weighty burden of establishing that a 'clear and unmistakable' waiver has occurred." (quoting *Metropolitan Edison Co. v. NLRB*, 460 U.S. 693, 708, 103 S.Ct. 1467, 75 L.Ed.2d 387 (1983))); *cf. United States v. Omdahl*, 104 F.3d 1143, 1146 (9th Cir.1997) (party asserting the affirmative defense of estoppel has burden of proof).

 These fundamental principles are equally applicable to the workers' compensation context. Thus, a formal award that gives the claimant no more than payments that are analogous to maintenance and cure will not be deemed to settle all of the seaman's claims and will not bar a Jones Act suit. Whether waiver occurs where a formal award directs payment that includes money not analogous to maintenance and cure, *i.e.*, that compensates substantially beyond a period of unemployment, might well depend on a variety of factors, such as the extent to which the payment compensates beyond the period of unemployment, the duration of the compensation payments, and whether or not the claimant indicated an intention to pursue a Jones Act remedy. Waiver will not be inferred unless the circumstances make it clear that the claimant elected to pursue a compensation remedy in lieu of a Jones Act remedy.

In the pending case, it appears that the Board awarded compensation of $16,400 at a rate of $400 a week. This award for 41 weeks appears to cover the period of Mooney's unemployment (although it might have exceeded that period by a *de minimis* amount of two days). When the Board determined the extent of Mooney's disability, it concluded that he had suffered a 12½ percent loss of use of his right leg. Loss of a leg entitles a claimant to compensation for 288 weeks. *See* N.Y. Work. Comp. Law § 15(3)(b) (1993). Thus, the Board determined that Mooney's partial disability entitled him to 36 weeks of compensation (12½% × 288). Since he had already been paid for 41 weeks, the Board awarded no further compensation. If, on remand, the District Court determines that, as now appears, the only compensation awarded covered the period of Mooney's unemployment and was therefore analogous to maintenance and cure, then the Board's award, even if formal, did not settle all of his claims and does not bar a Jones Act remedy.

B. *Waiver under state law*

 What the parties have referred to as a waiver under state law does not differ, in practical effect, from waiver under federal law. Indeed, if state law were to create a standard for waiver of a federal claim more easily met than the federal standard, then, as *Reyes* noted, "we would be required to consider whether the state statute as applied conflicts with important federal regulatory interests." *Reyes*, 199 F.3d at 629. But New York does not use a more lenient standard. As *Reyes* noted,

the New York Court of Appeals has construed section 113 strictly, ruling that a waiver will not be found unless it is "express," *Pedersen v. Manitowoc Co.*, 25 N.Y.2d 412, 417, 306 N.Y.S.2d 903, 907, 255 N.E.2d 146 (1969), or at least "unequivocal," *Dacus v. Spin–Nes Realty & Constr. Co.*, 22 N.Y.2d 427, 431, 293 N.Y.S.2d 83, 87, 239 N.E.2d 718 (1968).

We believe that *South Buffalo Ry. Co. v. Ahern*, 344 U.S. 367, 73 S.Ct. 340, 97 L.Ed. 395 (1953), provides guidance in resolving the waiver question. Ahern, an interstate railroad employee, was injured on the job and was awarded weekly compensation by the Board. *See id.* at 368, 73 S.Ct. 340. He later died of his injuries. *See id.* at 369, 73 S.Ct. 340. At a subsequent hearing to determine a final disability award, the railroad for the first time argued that the Board lacked jurisdiction over the workers' compensation claim because the deceased was covered under FELA, which allegedly deprived the Board of jurisdiction. *See id.* The Board rejected the argument and the New York Court of Appeals affirmed, invoking § 113 and holding that Ahern had waived his FELA rights by accepting workers' compensation. *See id.*

■■■ On appeal to the United States Supreme Court, the railroad argued that the state high court's interpretation of § 113 "unconstitutionally authorize[d] the Workmen's Compensation Board to invade a field foreclosed by governing federal legislation." *Id.* at 370–71, 73 S.Ct. 340. The Supreme Court disagreed, finding that the New York Court of Appeals successfully avoided a federal-state collision by interpreting § 113 as "a mere legislative authorization, *permitting* the Board to effectuate private agreements for compromising a federal controversy by resort to an impartial local umpire—that is all that section 113 of the Workmen's Compensation Law purports to accomplish. The difference between coercion and permission is decisive." *Id.* at 372, 73 S.Ct. 340 (emphasis in original) (internal quotation marks and

footnote omitted). If, as a permissive legislative device, § 113 would validly preclude an FELA action, we see no principled reason why it may not also bar a Jones Act or general maritime law claim. Therefore, if, on remand, the district court finds that Mooney's conduct would be an unequivocal waiver under New York law, then the court may conclude that § 113 precludes the present action. We stress, however, that we express no opinion on the merits of the City's waiver defense.

## CONCLUSION

For the reasons explained above, we vacate the amended judgment of the district court and remand for further proceedings consistent with this opinion.